WEST VIRGINIA JUDICIAL

INQUIRY COMMISSION

*v.*

JUDGE PIERRE E. DOSTERT

(No. 14747)

Decided June 19, 1980.
Rehearing Denied June 30, 1980.

*Fowler, Paterno & Lane, Charlotte R. Lane,* for Inquiry Commission.

*Rice, Hannis & Douglas, Richard L. Douglas,* for Dostert.

HARSHBARGER, JUSTICE:

Circuit Judge Pierre E. Dostert asks us to review a recommendation by the West Virginia Judicial Review

Board that he be publicly censured, suspended without pay for six months, and required to pay the costs of these disciplinary proceedings, for violating our Judicial Code of Ethics.

The West Virginia Judicial Inquiry Commission filed a complaint against Judge Dostert for breaching Canons 2A and 3A of the Code.[1] After a hearing, the review

---

[1] Judicial Code of Ethics, W. Va. Code, App.

CANON 2
A Judge Should Avoid
Impropriety and the Appearance of
Impropriety in All His Activities

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

*Commentary*

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

CANON 3
A Judge Should Perform
the Duties of His Office Impartially
and Diligently

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

A. Adjudicative Responsibilities.

(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.

(2) A judge should maintain order and decorum in proceedings before him.

(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.
. . .

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications con-

board made its recommendation, objected to by Judge Dostert because the evidence did not support the findings of fact or conclusions, and the recommended penalties were disproportionate to his misdeeds.

Article VIII, Section 8 of the *West Virginia Constitution* vests in this Court the power to censure, suspend, or retire judges, justices, or magistrates for violating the Code of Ethics. We promulgated and adopted Rules of Procedure for Handling Complaints Against Justices, Judges, and Magistrates[2] in 1976, establishing a Judicial Inquiry Commission and Judicial Review Board. After hearing and arguments before the board, at which the commission and respondent present their cases, the board must make a written recommendation including findings of fact, legal conclusions, and proposed disposition of charges. Rules, II(A) (2); *West Virginia Judicial Inquiry Commission v. Allamong,* ___ W.Va. ___, 252 S.E.2d 159, 160 (1979). The recommendation and record is then forwarded here. Our role in the process is defined in Rules, II(a) (3):

> The Supreme Court of Appeals shall review the record of the proceedings on the law and the facts and shall afford the aggrieved Judge or his counsel an opportunity to be heard before the Supreme Court of Appeals.[3]

cerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. . . .

[2] W. Va. Code, App.

[3] The commission suggests that we apply the same standard of review to decisions of the board that we use to review appeals from the Workmen's Compensation Appeal Board. However, in workmen's compensation cases, the legislature has mandated that we give that board's findings of fact the same weight as findings by trial judges. Code, 23-5-4a. Unless they are clearly wrong, we will not set aside or reverse the findings. *Workman v. Workmen's Compensation Comm'r.,* ___ W. Va. ___, 236 S.E.2d 236 (1977). But we are not required to, and do not, judge their legal conclusions by a "clearly wrong" standard. *Barnett v. State Workmen's Compensation Comm'r.,* 153 W. Va. 796, 172 S.E.2d 698 (1970).

There is nothing in the constitution or rules that requires us to give any conclusive weight to findings or recommendations of the board, and we decline to do so. We shall review the record on the facts and law, and assess the sanctions imposed, de novo.

We are constitutionally vested with responsibility for disciplining judicial officers, and it is our constitutional responsibility to review the record and make an independent evaluation of it. This "independent evaluation" standard has been adopted in other jurisdictions:

> Since the ultimate, dispositive decision to censure or remove a judge has been entrusted to this court, we felt it our responsibility 'in exercising that authority ... [to] make our own, independent evaluation of the record evidence adduced below.' ([Geiler v. Commission on Judicial Qualifications, 10 Cal.3d 270] at p. 276, 110 Cal. Rptr. at p. 204, 515 P.2d at 4.)
>
> > Spruance v. Commission on Judicial Qualifications, 119 Cal. Rptr. 841, 532 P.2d 1209, 1212 (1975).

See In Matter of Mikesell, 396 Mich. 517, 243 N.W.2d 86 (1976); In re Hanson, ____ Alaska ____, 532 P.2d 303, 309 (1975).[4]

The complaint against Judge Dostert, as amended, alleges that he: (1) participated in specified arrests; (2) carried a pistol without a proper license while participating in the arrests; (3) carried a pistol without a license on other occasions; and (4) improperly entered an order relieving a prosecuting attorney from acting in cases arising out of the arrests.

---

[4] Other jurisdictions will affirm the commission's findings of fact if they are supported by the evidence. In Matter of Edens, 290 N.C. 299, 226 S.E.2d 5 (1976); In re Kelly, ____ Fla. ____, 238 So.2d 565, cert. denied, 401 U.S. 962, 91 S.Ct. 970, 28 L.Ed.2d 246, reh. denied, 403 U.S. 940, 91 S.Ct. 2245, 29 L.Ed.2d 720; In re Terry, 262 Ind. 667. 323 N.E.2d 192, reh. denied, 262 Ind. 667, 329 N.E.2d 38, cert. denied, 423 U.S. 867, 96 S.Ct. 129, 46 L.Ed.2d 97.

The pleading and transcript indicate Judge Dostert admitted participating in the arrests on March 25, 1979, carrying a pistol at that time and on other occasions, and relieving the prosecutor. He only denies that he was carrying the pistol *without a license;* and he affirmatively avers that he was justified in removing the prosecutor.

The record contains no evidence or testimony with respect to the arrests in which Judge Dostert was involved. His admission that he participated in arrests supported the board's finding:

> We find that the participation of Judge Pierre E. Dostert in the arrests of the three individuals in Bolivar, West Virginia, on March 25, 1979, whether armed or not armed, was a violation of Canon 2A of the Judicial Code of Ethics which provides "a Judge should respect and comply with the law and conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

> When the Judge took it upon himself to participate in the arrests of the individuals, he departed from the role of a judicial officer who is an impartial arbitrator of the law.

> A Judge is not expected to and should not summarily step from his judicial function and become an investigator, prosecutor, arresting officer, or instigator of legal actions, for when he does, he lessens the public confidence in the impartiality of his office. It is important that the Judge not only actually maintain integrity and impartiality, but that he must also give the appearance of such. No Judge should take unto himself activities or functions which are delegated to other branches of the government. When the Judge shed his robe of judicial impartiality and donned the garb of a participant in an arrest, he could not promote public confidence in the impartiality of the judiciary.

We believe that this is a proper interpretation and application of Canon 2A.

The review board also found that he carried a pistol without a license, disregarding Canon 2A, *supra.* The evidence elicited at his hearing makes that conclusion inevitable.

W. Va. Code, 61-7-2,[5] sets forth the required procedure for obtaining a weapons license, which includes, *inter alia:*

[5] §61-7-2. License to carry weapons; how obtained.

Any person desiring to obtain a state license to carry any such weapon as is mentioned in the first section of this article, within one or more counties in this State, shall first publish a notice setting forth his name, residence and occupation, and that on a certain day he will apply to the circuit court of his county for such state license. Such notice shall be published as a Class I legal advertisement in compliance with the provisions of article three [§59-3-1, et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the county in which such person resides. Such notice shall be published at least ten days before such application is made. After the publication of such notice and at the time stated in such notice, upon application to such court, it may grant such license to such person, in the following manner, to wit:

The applicant shall file with such court his application in writing, duly verified, which application shall show:

(a) That such applicant is a citizen of the United States of America;

(b) That the applicant has been a bona fide resident of this State for at least one year next prior to the date of such application, and of the county sixty days next prior thereto;

(c) That the applicant is over eighteen years of age; that he is a person of good moral character, of temperate habits, not addicted to intoxication, not addicted to the use of any controlled substance, and has not been convicted of a felony or of any offense involving the use on his part of such weapon in an unlawful manner, and shall prove to the satisfaction of the court that he is gainfully employed in a lawful occupation and has been so engaged for a period of five years next preceding the date of his application;

(d) The purpose or purposes for which the applicant desires to carry such weapon, the necessity therefor, and the county or counties in which such license is desired to be effective; and

(e) That the applicant has qualified under minimum requirements for handling and firing such firearms. These minimum requirements are those promulgated by the department of natural resources and attained under the auspices of the department of natural resources.

Upon the hearing of such application the court shall hear evidence upon all matters stated in such application and upon any

(1) Publication of a notice of application;

(2) A completed application;

(3) A public hearing;

other matter deemed pertinent by the court, and if such court be satisfied from the proof that there is good reason and cause for such person to carry such weapon, and all of the other conditions of this article be complied with, the court, or the judge thereof in vacation, may grant such license for such purposes, and no other, as such court, or the judge in vacation, may set out in the license (and the word "court" as used in this article shall include the circuit judge thereof, acting either in term or vacation); but, before such license shall so effective such person shall pay to the sheriff, and the court shall so certify in its order granting the license, the sum of fifty dollars, and shall also file a bond with the clerk of such court, in the penalty of five thousand dollars, with good security, signed by a responsible person or persons, or by some surety company, authorized to do business in this State, conditioned that such applicant will not carry such weapon except in accordance with his application and as authorized by the court, and that he will pay all costs and damages accruing to any person by the accidental discharge or improper, negligent or illegal use of such weapon or weapons. Any such license granted shall be good for three years, unless sooner revoked, as hereinafter provided, and be coextensive with the county in which granted, and such other county or counties as the court shall designate in the order granting such license; except that upon a proper showing the court granting such license to any person regularly employed as a security guard may, in its discretion, in the order granting such license extend the period of the validity of such license for a period not to exceed four years, under such terms and conditions as the court deems proper; except that regularly appointed deputy sheriffs having license shall be permitted to carry such revolver or other weapons at any place, within the State, while in the performance of their duties as such deputy sheriffs; and except that any such license granted to regularly appointed railway police shall be coextensive with the State. All license fees collected hereunder shall be paid by the sheriff and accounted for to the auditor as other license taxes are collected and paid, and the state tax commissioner shall prepare all suitable forms for licenses, bonds and certificates showing that such license has been granted and shall do anything else in the premises to protect the state and see to the enforcement of this section.

The clerk of the circuit court shall, immediately after license is granted as aforesaid, furnish the superintendent of the department of public safety a certified copy of the order of the court granting such license, for which service the clerk shall be paid a fee of two

(4) An application fee and bond; and

(5) A certified copy of the order furnished to the Department of Public Safety.

Judge Dostert's noncompliance with that law was described in his testimony:

BY COUNSEL:

Q Sir, would you please state your name, your place of residence and your business or occupation?

A My name is Pierre E. Dostert. My residence is Wolakadia, Harpers Ferry, West Virginia. I am the Circuit Judge of the 23rd Circuit of the State of West Virginia.

Q How long have you served as the Judge of the 23rd Judicial Circuit?

A I took office January the 1st, 1977.

. . .

Q If you would, sir, would you please relate to the Board the circumstances under and by which you obtained a permit to carry a pistol?

A Exhibit 1 is an order bearing the date the 2nd of June, 1978, reciting that I came before the Court and that the Court concludes—in other words, I concluded, as Circuit Judge that I was qualified in all respects to carry a pistol and it directed that the permit be issued.

It further directed that there be no publication or disclosure to the public of the issuance of the permit and that an order be sealed and placed in the administrative order book by the Clerk of the Court to be opened only upon court order and it further directed that the West Virginia State Police not be notified in writing because it was my intention to advise

---

dollars which shall be taxed as cost in the proceeding. It shall be the duty of the clerk of each circuit court to furnish to the superintendent of the department of public safety, at any time so required, a certified list of all such licenses issued in his county.

all necessary officers of the issuance of this permit.

Q Your Honor, when was this hearing held?

A It was on Friday, the 2nd of June, 1978.

Q When and by whom was the order typed?

A It was typed by myself on the 2nd of June, 1978, and placed in an envelope and sealed on that date. It was not transmitted to the Clerk on June the 2nd, 1978, but was retained in camera or in chambers by me.

Q Your Honor, I would suggest to you that the last entry on the order recites that the clerk should enter the above order as of the 2nd day of April, 1979. What, if any, explanation do you have for the variance of one year in the dates?

JUDGE: I think you are referring to June.

BY COUNSEL:

Q June, I am sorry.

A The variance is a typographical error.

Q And it was typed by you?

A It was typed by me.

Q From June 2, 1978, where did the order remain?

A The order remained in my chambers until April the 2nd, I believe, just a minute. I will check that out. April 2nd, 1979 when I transmitted the order still under seal and unopened to the Clerk of the Berkeley County Circuit Court.

Q That is Mr. J. Hugh Shipper?

A That is correct.

Q What, if any instructions did you give Mr. Shipper?

A I instructed him to enter it upon the order book of the Court sealed to be opened only under court order.

Q All right, sir.

At the time of entering the order of June 2, 1978, were you aware of the statutory provisions in West Virginia Law concerning the circumstances under and by which a pistol permit should be issued?

A Yes, I was.

Q Did you consider these matters in granting the pistol permit?

A I considered all of those matters and concluded that I qualified in all respects as being eligible to obtain a pistol permit in the State of West Virginia. I am referring specifically to the West Virginia Code, Chapter 61, Article 7, Section 2.

. . .

A Specifically I am referring to all of the qualifications that are set forth in that section. I am a citizen of the United States of America. I have resided in the State for at least one year prior to the date of the application. My residence was at that time in Jefferson County and Morgan County. I am over 18 years of age.

Q You were at that time; is that correct?

A Yes, I was. I feel that I satisfy the requirements of having good moral character, temperate habits, not addicted to intoxication. I did not use controlled substances. I have never been convicted of a felony or any other offense except a traffic ticket. I have been lawfully employed for the previous five years and the purpose I wish that permit for was to carry a weapon to use defensively only and that I qualified under the minimum requirements of handling and firing such firearm.

Q How did you make a determination that you were qualified under the minimum requirements for handling and firing firearms?

A  I had a conversation with Mr. Steorts, the conservation officer of the three counties here and explained to him my experience with firearms of the type that I proposed to carry and he indicated that with those—the experience that I had, that I was qualified.

. . .

Q  Judge, after you entered the order on June 2nd, 1978, why did you retain the order in camera?

A  It was my intention that no one know that I carried a defensive weapon.

Q  What was your reasoning in this?

A  The reason in this is a person would be less inclined to use an offensive weapon upon myself.

Q  You are aware of the statutory requirements for the issuance of a pistol permit, I presume?

A  That is correct.

Q  If you would please tell the Board why you did not file the petition or advertise it as required by law.

A  If I advertised it as required by law, then everybody in the county would know that I carried a defensive weapon upon my person. This would be an invitation for somebody to employ instead of an ordinary weapon, a high-powered rifle with a scope as was done to the judge down in Texas, a United States District Judge in 1979.

Q  All right, sir, what about the posting of bond?

A  The posting of bond, I waived that. The bond requirement is a maximum of $5,000, although the Sheriff is allowed to file a $3,000 bond. I knew at the time the permit was issued that if at any time I was required to write a check for $5,000, I could do it and it would pass the bank. I estimate my resources at close to a quarter of a million dollars. Thus, there is am-

ple funds with which to pay any judgment or wrongfulness of the gun, which is the intent of the bond.

Q Based upon your knowledge of the statute, Your Honor, in your judgment and in your opinion, did you comply substantially with the law?

A I complied substantially with the law in every respect . . . .

Q After you had entered the order in June of 1978, did you have occasion to communicate the fact that you were armed to anyone?

A From the time I took office, I communicated to the State Police, the Sheriff's Department and the town police the fact that I would be carrying a defensive weapon.

We must suppose that most persons who want to carry a weapon would prefer to avoid the statutory requirements for the very reasons stated by Judge Dostert. But they are not entitled to do so, and neither is he. Circumvention of the statute cannot be excused by "substantial compliance", and Judge Dostert violated Canon 2A by not obeying Code, 61-7-2.[6]

The Board decided that Judge Dostert violated Canon 3A, *supra,* when he removed the prosecutor from the cases in which Dostert acted as an arrestor. The record shows that the arrests resulted in extensive newspaper coverage, including articles containing statements by the prosecutor about how he expected to handle the case. Judge Dostert explained his decision to remove him:

JUDGE:

As a result of reading these articles I did some legal research and engaged in some reflection and concluded that Mr. Skinner had improperly violated the Canons of Ethics which prohibit the prosecutor to comment on the merits of the case

---

[6] Conviction for violating Code, 61-7-2, is a misdemeanor punishable by not less than six nor more than twelve months for the first offense; and a second violation is a felony, Code, 61-7-1.

prior to its presentation to the Court. There is a provision of the West Virginia Code that says when in the opinion of the Circuit Court Judge it is improper for the prosecutor to act, he may be removed and a special prosecutor appointed.

COUNSEL:

Q Did you make a finding with respect to Mr. Skinner's conduct?

A On April the 5th, I entered an order stating that he had violated that Canon of Ethics and therefore had to be removed and I ordered his removal and appointed Mr. McCune to prosecute the case.

W. Va. Code, 7-7-8,[7] gives a circuit judge the power to remove an elected prosecutor. The procedure by which

---

[7] §7-7-8. Assistant prosecuting attorneys;
appointment and compensation; when
court may appoint attorney to prosecute.

The prosecuting attorney of each county may, in accordance with and limited by the provisions of section seven [§7-7-7] of this article, appoint practicing attorneys to assist him in the discharge of his official duties during his term of office. Any attorney so appointed shall be classified as an assistant prosecuting attorney and shall take the same oath and may perform the same duties as his principal. Each assistant shall serve at the will and pleasure of his principal and may be removed from office by the circuit court of the county in which he is appointed for any cause for which his principal might be removed.

If, in any case, the prosecuting attorney and his assistants are unable to act, or if in the opinion of the court it would be improper for him or his assistants to act, the court shall appoint some competent practicing attorney to act in that case. The court shall certify to the county court the performance of that service when completed and recommend to the county court a reasonable compensation for the attorney for his service, and the compensation, when allowed by the county court, shall be paid out of the county treasury. No provision of this section shall be construed to prohibit the employment by any person of a practicing attorney to assist in the prosecution of any person or corporation charged with a crime.

The compensation to be paid to an assistant prosecuting attorney shall include compensation provided by law for any services he renders as attorney for any administrative board or officer of his county. No assistant prosecuting attorney shall serve as attorney for any other political subdivision of this State.

this was accomplished here, was held invalid in *State ex rel. Preissler v. Dostert,* \_\_\_ W. Va. \_\_\_, 260 S.E.2d 279 (1979). At that time we did not decide whether the judge properly exercised his discretion. *Id.* at 285. But if his decision was wrong, it was error in judgment and thus, not grounds for discipline.[8] There was no convincing proof that Judge Dostert removed the prosecutor for improper reasons. Absent proof of improper motive, his exercise of discretionary power, though wrong, did not violate Canon 3A. *See, West Virginia Judicial Inquiry Commission v. Casto,* \_\_\_ W. Va. \_\_\_, 263 S.E.2d 79 (1979).

We believe the recommended sanction of a six-month suspension without pay to be appropriate. It is axiomatic that a judge serves as a neutral and detached magistrate. He is charged with the duty of impartiality in administering justice. His role is not that of a prosecutor who advises and assists law enforcement officials in the performance of their duties. Public confidence in the integrity of the judiciary is certain to be undermined if a judge can assume the partisan role of assisting and directing law enforcement officials in making arrests. Dostert's admitted activities in this respect cannot be condoned.

Additionally, his failure to comply with the mandatory provisions of the weapons law is a criminal offense, which compounds the seriousness of the charges. We have not been able to find authority in a judicial disciplinary case in which acts similar to these have been discussed; but cases from other jurisdictions involving less extreme acts have merited punishment at least as severe as the penalty here imposed. *Geiler v. Commission on Judicial Qualifications,* 110 Cal. Rptr. 201, 515 P.2d 1 (1973) (vulgar language in professional dealings, bad faith interference with attorney-client relationship warranted removal from office); *In re DeSaulnier,* 279 N.E.2d 296 (Mass. 1972) (attempting to influence disposi-

---

[8] Power of Court To Remove or Suspend Judge, 53 A.L.R.3d 882, 911, §11; 48 C.J.S., Judges, §27, at 976, and cases cited therein.

tion of a criminal case and personal association and activity with bondsman warranted removal); *In re Heideman*, 387 Mich. 630, 198 N.W.2d 291 (1972) (failure to order jury trials on request and failure to promptly dispose of cases with lack of accurate recordkeeping justified removal); *In re Perry*, 53 A.D.2d 882, 385 N.Y.S.2d 589 (1976), *appeal dismissed*, 40 N.Y.2d 1079, 392 N.Y.S.2d 1029 (approved removal of judge who handcuffed and intemperately berated coffee vendor who had served him bad coffee).

We conclude that public censure, suspension without pay for six months, and payment of the reasonable costs of these proceedings is proper.

> *Censured, six-month*
> *suspension,*
> *and ordered to pay costs.*