299 S.E.2d 872

**JUDICIAL INQUIRY COMMISSION OF WEST VIRGINIA**

v.

**Justice Darrell V. McGRAW, Jr.**

**No. 15779.**

Supreme Court of Appeals of West Virginia.

Jan. 11, 1983.

John R. Fowler, Charleston, for Inquiry Com'n.

Jeremy McCamic, Wheeling, for Justice McGraw.

MILLER, Justice:

The West Virginia Judicial Review Board after a full hearing[1] found that the respondent, Justice Darrell V. McGraw, Jr., was not in violation of Canon 3 of the Judicial Code of Ethics and exonerated him from any ethical impropriety.[2] We concur in this result after a reviewing pursuant to the guideline set in Syllabus Point 1 of *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980),

> "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial Review Board in disciplinary proceedings,"

This complaint arose because the respondent had made certain public statements regarding the judiciary's independent budget-making power under the West Virginia Constitution.[3] These remarks were occasioned when the Legislature deleted some

---

**1.** For various procedural aspects of this same case, *see State ex rel. McGraw v. West Virginia Judicial Review Board*, 165 W.Va. 704, 271 S.E.2d 344 (1980), and *State ex rel. McGraw v. West Virginia Judicial Review Board*, 164 W.Va. 363, 264 S.E.2d 168 (1980).

**2.** The particular portions of Canon 3 referred to in the complaint were:

"Canon 3, Section A, Subsection (6), requires that 'a judge should abstain from public comment about a pending or impending proceeding in any court * * *;' and,

"Canon 3, Section C, Subsection (1), requires that 'a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned * * *.'"

**3.** Specific comments made by the respondent include:

"We probably feel a devotion to an independent judiciary, which some people in the past

have not felt. And the Constitution quite clearly says that the three branches of government—three departments, in the case of West Virginia—are separate, distinctive and independent and probably our court is determined to vindicate that separation." Charleston Gazette, March 31, 1978 at 11.

"Now, as a practical matter, we have long recognized that certain members of the legislative leadership resent the fact that the judiciary does not have to come before the legislature bowing and scraping and pleading for funds.

\* \* \* \* \* \*

"But their conduct with regard to our budget does not represent an attempt at fiscal integrity or fiscal belt-tightening. It represents nothing less than an attack on the independence of the judiciary." Charleston Gazette, April 3, 1978 at 10B.

items from the judicial budget for fiscal year 1978–1979. Subsequently, an original mandamus suit was filed in this Court, *State ex rel. Bagley v. Blankenship*, 161 W.Va. 630, 246 S.E.2d 99 (1978), which sought to compel restoration of the budget cuts based on Section 51 of Article VI of the West Virginia Constitution and on prior cases holding that this section of our Constitution clearly established the right to an independent judicial budget.[4]

The respondents in the mandamus action filed a motion to recuse Justice McGraw claiming that his prior statements relating to the independent judicial budget foreclosed his ability to impartially hear the mandamus action which involved the same issue. Justice McGraw was not formally recused from the case although as the *Bagley* opinion clearly indicates, he did not actively participate in the decision-making process:

> "Justice McGraw abstained from the designated Court's consideration of and rulings on the motion to disqualify him from participation in the deliberations on and decision in the case. Because of scheduled conferences and other duties, commitments and obligations of the permanent Court, Justice McGraw was necessarily absent from the final deliberations and decision of the designated Court in this case, but concurs and joins in the designated Court's decision and opinion herein." 161 W.Va. at 660, 246 S.E.2d at 115.

On this basis alone, we believe the Judicial Review Board's finding was correct.

Even on the merits, we find a considerable body of law which holds that a judge will not be disqualified to sit on a case merely by expressing his opinion on a question of law involved in a case in his court or which may later come before him. *E.g.,* Justice Rehnquist's Memorandum on Motion to Recuse, *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972); *Unit-*ed States v. Bray*, 546 F.2d 851 (10th Cir. 1976); *Antonello v. Wunsch*, 500 F.2d 1260 (10th Cir.1974); *Kreling v. Superior Court in and for Los Angeles County*, 63 Cal. App.2d 353, 146 P.2d 935 (1944); *People v. Church*, 192 Colo. 488, 560 P.2d 469 (1977); *In re Grblny's Estate*, 147 Neb. 117, 22 N.W.2d 488 (1946); *Davidson v. Shilling*, 187 Okl. 319, 103 P.2d 84 (1940); *Slayton v. Commonwealth*, 185 Va. 371, 38 S.E.2d 485 (1946); 48A C.J.S. *Judges* §§ 117–118 (1981); 46 Am.Jur.2d *Judges* § 169 (1969).

One of the most well-reasoned cases in this area is *Papa v. New Haven Federation of Teachers*, 186 Conn. 725, 444 A.2d 196 (1982), where a circuit court judge was sought to be removed as a result of two public statements. The first occurred during an address that he made to a group of lawyers where among other things he discussed the impropriety of teachers' strikes. Subsequently litigation was brought in his court seeking an injunction against some striking school teachers. The court concluded that these general remarks were not sufficient to disqualify the judge:

> "In the course of their duties, judges frequently express opinions about specific laws, the obligation to obey and the consequences of disobedience. Given that such judicial expressions of opinion do not disqualify judges from sitting on later cases involving the same legal issues, it is difficult to perceive why judges' general, extrajudicial comments concerning legal issues disqualify them from hearing later cases involving those issues." 186 Conn. at 743–44, 444 A.2d at 206.

The judge's second statement was made in a newspaper interview while the teachers' strike case was pending in his court, where among other things he indicated that he was "ready to jail more" if the strike was not settled by Monday. The judge refused to hear a motion for his disqualification

---

4. The court in *Bagley, supra,* following prior law concluded in Syllabus Point 5:

> " 'Article 6, Section 51 of the West Virginia Constitution, when read in its entirety, shows a clear intent on the part of the framers thereof and the people who adopted it to preclude both the Legislature and the Governor from altering the budget of the judiciary

department as submitted by that department to the Auditor.' Syllabus, point 3, *State ex rel. Brotherton v. Blankenship*, 157 W.Va. 100, 207 S.E.2d 421 (1973)."

*See also* Syllabus Points 15 and 16, *State ex rel. Trent v. Sims*, 138 W.Va. 244, 77 S.E.2d 122 (1953).

stating that the newspaper article was inaccurate. The Supreme Court of Connecticut concluded that this was error as his conduct in the specific context of the case could raise a reasonable question as to his impartiality.

■■■ In the present case, we believe that the respondent's statements made in advance of the mandamus action regarding the constitutional independence of the judicial budget, cannot be deemed sufficient to warrant his disqualification because of a claimed lack of impartiality. As *Papa v. New Haven Federation of Teachers, supra,* and the other cases cited herein point out, the public expression of a judge as to a legal issue does not automatically require his later disqualification when the issue is presented to him in a specific case.

In a somewhat related vein, we held in Syllabus Point 5 of *State v. Ellis,* 161 W.Va. 40, 239 S.E.2d 670 (1977):

"A trial judge's public statements that he believes sound public policy requires persons convicted of drug-related offenses to be sentenced to the penitentiary do not create such a bias or prejudice against a particular defendant to justify disqualification of the judge."

Also of some bearing is *Taylor County Commission v. Spencer,* 169 W.Va. 37, 285 S.E.2d 656, 664 (1981), where we concluded that a judge was not disqualified from presiding over a case involving the county commission because he had earlier made some remarks during jury selection in an unrelated case in regard to "the inadequacy of the circuit courtroom facilities when compared with the facilities of the County Commission."

For the foregoing reasons, the findings of the Judicial Review Board are affirmed.

Affirmed.

McGRAW, C.J., deeming himself disqualified did not participate in the consideration of this case.

McHUGH, J., served on the West Virginia Judicial Review Board and deemed himself disqualified during the pendency of those proceedings and did not participate in the consideration or decision of this case.