314 S.E.2d 79

**In the Matter of Magistrate Ward HARSHBARGER.**

**No. 44–82.**

Supreme Court of Appeals of West Virginia.

March 21, 1984.

Charles R. Garten, Charleston, for Judicial Hearing Bd.

William Forbes, Charleston, for Ward Harshbarger.

PER CURIAM:

In this judicial disciplinary proceeding, the Judicial Hearing Board recommends that Kanawha County Magistrate Ward Harshbarger be publicly censured or admonished for a neglect of duties. We concur in the Board's recommendation, and therefore publicly censure Magistrate Harshbarger for his neglect, and caution him not to neglect his duties in the future.

On October 11 and 12, 1983, a hearing in this matter was held before the West Virginia Judicial Hearing Board. At this hearing, testimony was taken from Paul Crabtree, administrative director of the courts for the state of West Virginia; Michael Kelly, assistant administrative director of the courts for magistrate court system; William H. Witherall, a Kanawha County magistrate; and Ward Harshbarger, also a Kanawha County magistrate. In addition, certain exhibits were introduced and stipulations made concerning the circumstances surrounding the incident in question.

This evidence revealed that Magistrate Harshbarger was on duty as night court magistrate between 7:00 p.m. and 8:00 a.m. on December 4 and 5, 1982, at the Kana-

wha County Magistrate Court. This thirteen hour tour of duty grew from Magistrate Harshbarger's voluntary agreement to work for Magistrate Witherall on the December 4, 1982, evening shift. Magistrate Harshbarger testified that, because he was not adequately prepared to process a juvenile brought in by Charleston police, "we packed up and moved over to Morris Street," the location of magistrate day court, at approximately 4:30 a.m. Magistrate Harshbarger did not return to night court. Thereafter, he stipulated that at 6:30 a.m., ninety minutes prior to the end of the shift, he went home for what he characterized as "lunch," and did not return to complete the night court shift. Most of the time between 4:30 a.m. and 6:30 a.m. is not completely accounted for.

Magistrate Harshbarger also stipulated that, at approximately 6:45 a.m. on December 5, 1982, a Charleston Area Medical Center security person went to the Kanawha County Courthouse and then to the Morris Street offices of the Kanawha County Magistrate Court attempting to locate a magistrate in order to seek an emergency mental hygiene commitment for a patient said to need confinement for treatment, but as the result of Magistrate Harshbarger's departure, he could find no magistrate on duty. Charleston Area Medical Center personnel were informed by the Kanawha County Sheriff's Department that a magistrate would not be on duty until 8:00 a.m. After 8:00 a.m., another magistrate was contacted and the appropriate paperwork was completed so that the patient could be transported to Spencer State Hospital. Subsequently, a letter was sent to Michael Kelly by Dr. David K. Walker, Director of the Inpatient Program at the Charleston Area Medical Center, complaining about the lack of availability of a magistrate.

In Syllabus Point 1 of *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980), this Court stated: "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." In addition, as we recently stated in Syllabus Point 4 of *In Re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983): "Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'"

Canon 3 of the West Virginia Judicial Code of Ethics (1982 Replacement Vol.) provides, in pertinent part, that "The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law." On June 30, 1982, prior to the incident involved, this Court entered an order requiring magistrates on night duty in Kanawha County to conform to the following: "It is, therefore, ORDERED that commencing on July 2, 1982 ... counties having five or more magistrates shall, on a rotating basis, have a magistrate at night court at, or relatively convenient to, the county jail between the hours of 7:00 p.m. and 8:00 a.m." The Judicial Hearing Board held that by failing to comply with this order, Magistrate Harshbarger had violated at least the spirit of Canon 3, and therefore recommended public censure or admonishment.

Magistrate Harshbarger admits that he left his post at 6:30 a.m. on the morning in question to go home and that he did not return. Although he testified that he notified the Kanawha County Sheriff Department's Communication Center concerning where he could be reached in case he was needed, no notice was available at the night magistrate court informing members of the public that he could be reached by contacting the communications center. Magistrate Harshbarger's response to the question, "how was the general public or persons seeking a Magistrate supposed to know how to reach Communications, so that Communications, in turn, can reach the Magistrate?" was "It is the main Communications number, they have always reached us through dialing Communications." When asked, "But there's no other notice, other than just common knowledge

among the people that generally seek warrants at that hour of the day, to go to Communications?" Magistrate Harshbarger responded, "Yes, sir, right, general practice."

■ Magistrate Harshbarger contends that the order of June 30, 1982, does not require night magistrates to be physically present during the hours indicated, but that the magistrate need only be "relatively convenient to" magistrate court. He contends that because he was at his home in Dunbar, he did not violate the order. It is clear from even the most cursory review of the order, however, that the phrase "relatively convenient to" modifies "night court" and not "magistrate."

In *State v. Mason*, 162 W.Va. 297, 249 S.E.2d 793, 797 (1978), this Court discussed the importance of magistrate availability in the initial stages of a criminal proceeding:

> The creation and implementation of the magistrate court system in this state under the aegis of the Judicial Reorganization Amendment of 1974 has provided access to a judicial officer at all hours of the day or night. Persons arrested late at night, as is often the case, should not be subjected to interrogation throughout the night without presentment to a magistrate. Persons must be taken without unreasonable delay to a magistrate in the county where the arrest was made. The judicial system must function at all hours of the day and night, or the statutory safeguards designed to guarantee that criminal defendants be fairly treated from the time of arrest to the time of trial will become eviscerated and meaningless.

Subsequently, in *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261, 271 (1982), we stated that "an unjustifiable and unreasonable delay in taking the accused before a magistrate after his initial arrest may in itself be sufficient to render a confession involuntary." *See also State v. Mitter*, 169 W.Va. 652, 289 S.E.2d 457 (1982). In addition to the necessity of magistrate avail-

ability for the prompt presentment of criminal suspects, magistrates are also charged with the disposition of juvenile petitions, alcohol and drug petitions, mental hygiene petitions, and domestic violence petitions, which not infrequently arise during the late night or early morning hours, particularly in an area as populous as Kanawha County, and which critically require prompt attention.

The necessity of magistrate availability also derives from important constitutional considerations. Article III, § 17 of the West Virginia Constitution provides, in pertinent part, that "The courts of this State shall be open ... and justice shall be administered without sale, denial or delay." The Legislature, in addressing such problems as criminal conduct, substance abuse, domestic violence, juvenile matters, and mental health, has enacted dispositional schemes which anticipate that magistrates will be available around the clock, and which recognize the citizen's right of access to magistrate courts around the clock.

Following the decision in *Mason*, Rule 4(c) of the West Virginia Magistrate Court Rules was amended by this Court on September 17, 1980, to provide that "Counties having five or more magistrates shall, on a rotating basis, have a magistrate at night court at, or relatively convenient to, the county jail between the hours of 7:00 p.m. and 8:00 a.m." The stated purpose of this rule was "to ensure that magistrates shall be available twenty-four hours a day in every county to deal with criminal matters, and to that end this rule shall apply." The June 30, 1982, order entered by this Court was merely a restatement of this rule directed to those counties having five or more magistrates, which includes Kanawha County. Therefore, Magistrate Harshbarger had the benefit of both Rule 4(c) of the Magistrate Court Rules and our June 30, 1982, order informing him of his duty to be physically present between the hours of 7:00 p.m. and 8:00 a.m.

■ Whether Magistrate Harshbarger left at 4:30 a.m.,* or at 6:30 a.m. as stipu-

---

* The reasonableness of Magistrate Harshbarger's transfer of the entire night court operations to day court at 4:30 a.m. merely because of the

unavailability of certain forms is questionable. The record does not reflect why Magistrate Harshbarger did not simply direct one of his

lated, without question he was not at his designated post where the law required him to be. Both Rule 4(c) and our subsequent order were designed to vindicate the public's right of access to magistrate courts, as well as the legislative assumption of continuous magistrate availability in the development of various dispositional schemes to address important public needs. Magistrate Harshbarger's actions in leaving his post prematurely, frustrated both of these important goals. Additionally, it should be emphasized that notice given to nonjudicial personnel concerning the whereabouts of a magistrate does not provide adequate notice to members of the public, as is practically demonstrated by the facts of this case.

■ Upon an independent evaluation of the record and recommendations of the Judicial Hearing Board, including the stipulation by Magistrate Harshbarger to his premature departure from his designated post

on the morning in question, we conclude that the allegations against Magistrate Harshbarger were proven by clear and convincing evidence; that he should be publicly censured for leaving his post early on December 5, 1982; and, that he should be cautioned not to leave his post early in the future.

Accordingly, the Court hereby publicly censures Kanawha County Magistrate Ward Harshbarger for his neglect of duty on December 5, 1982, and cautions him to refrain from engaging in this course of conduct in the future.

Censured.

---

assistants and/or the bailiff to retrieve the necessary forms from the day court offices. Although not addressed by the Judicial Hearing Board, it would appear that the transfer of operations to a location that was not "relatively convenient to" the county jail would result in a

violation of Rule 4(c) of the Magistrate Court Rules, particularly when a more convenient location was readily available.