315 S.E.2d 640

**In The Matter of Magistrate Gary OSBURN.**

**No. 15–83.**

Supreme Court of Appeals of West Virginia.

May 9, 1984.

---

Charles R. Garten, Charleston, for Judicial Investigation Comn.

George D. Beter, Huntington, for Magistrate Osburn.

PER CURIAM:

This is a judicial disciplinary proceeding in which the Judicial Hearing Board recommends that Wayne County Magistrate Gary Osburn be publicly reprimanded for failing to discharge his administrative responsibilities diligently and for failing to maintain professional competence in judicial administration. After examining the record before us, we concur in the Board's recommendation, and we, therefore, publicly reprimand Magistrate Osburn, and we caution him to discharge his responsibilities diligently in the future.

On June 28, 1983, a complaint was filed against Magistrate Osburn which charged him with violating Canon 3 A(1), Canon 3 A(4), Canon 3 B(1), and Canon 3 B(2) of the Judicial Code of Ethics.* The complaint specifically alleged that Magistrate Osburn, who was on duty in Wayne County, on September 17, 1982, was out of his office when a prisoner, Glen Rideout, was taken to the office. The magistrate was contacted by telephone and told that the prisoner was in the office. It was alleged that the magistrate directed his assistant to commit Mr. Rideout to jail by rubber-stamping a jail commitment form with his signature. It was also alleged that the magistrate's conduct was improper in that he failed to have the prisoner brought personally before him for a hearing, in that he failed to inform the prisoner in plain terms of the nature of the complaint against him and of his right to counsel, and in that he failed to inform the prisoner that he was not required to make a statement, and that

* The relevant sections of Canon 3 of the Judicial Code of Ethics provide:

"The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

A. Adjudicative Responsibilities

(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.

. . . . .

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

B. Administrative Responsibilities.

(1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

(2) A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him."

any statement made by him could be used against him. The Complaint also averred that the Magistrate failed to provide Mr. Rideout with reasonable means to communicate with an attorney or at least one other person for the purpose of obtaining counsel or arranging bail.

On October 11, 1983, a hearing in the matter was held before the West Virginia Judicial Hearing Board. At the hearing the testimony of a number of witnesses was taken. Glen Rideout testified that he had been arrested on September 17, 1982, and that he had been taken to Magistrate Osburn's office. The magistrate was not there at the time, and according to Rideout the assistant showed him papers which he read and signed. He said that the assistant spoke to the Magistrate on the telephone, but he could not remember speaking to him. He could not remember anyone other than the arresting officers telling him what he was charged with. He also testified that he did not believe that he was informed that he had the right to have an attorney appointed to represent him. A bond, however, was set for him.

While being questioned, Mr. Rideout was shown a document which he had signed on September 17, 1982. In that document he had stated that he had been informed of the charges against him, that he understood that he did not have to make incriminating statements, that any such statements might be used against him, and that he also understood that he was entitled to the assistance of counsel. In the document Rideout also had indicated that he had wanted an attorney appointed for him. Rideout testified that he had read through the document and that he had signed it.

Geraldine Rideout, Glen Rideout's mother, contradicted the testimony of other witnesses at the hearing and testified that her son was taken to jail directly after his arrest and denied that he was even taken to the magistrate's office.

Patricia Napier, the magistrate's assistant who was in the magistrate's office at the time Rideout arrived, testified that she called the magistrate and that he asked to speak to Mr. Rideout. According to her, a telephone conversation ensued between the magistrate and Rideout. She indicated that she had given Mr. Rideout a "right's sheet" and that he had signed it. She verified Mr. Rideout's testimony that Magistrate Osburn did not appear in the office while Rideout was there. She also testified that she had affixed the magistrate's name to Rideout's commitment papers with a rubber stamp.

Magistrate Osburn testified that he was on duty on September 17, 1982, and that he was at home eating when Mr. Rideout was taken to his office. He said that he talked with the prisoner over the telephone and informed him of his rights. He stated that he remained on the telephone while his assistant advised Mr. Rideout of his rights. He admitted that he had a rubber stamp which had been used for official papers, but when he had instituted the use of it, he had not considered such use wrong or improper. He testified that since the Rideout incident he had been informed by a judge that its use was improper.

At the conclusion of the hearing the Judicial Hearing Board found that Magistrate Osburn was absent from his duty post during the incident in question. The Board also found that the magistrate had informed the prisoner of his right over the telephone and that he had authorized his assistant to affix his signature to the commitment form by rubber stamp. The Board specifically found that Magistrate Osburn failed to have the prisoner Rideout personally brought before him for a hearing.

■ In syllabus point 4 of *In Re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983), we said:

"Under Rule III(C)(3) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'"

We have also held that the decision of the Judicial Hearing Board is not conclusive since, "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial Review Board [now Judicial Hearing Board] in disciplinary proceedings." Sylla-

bus Point 1, *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980).

 As previously noted, Canon 3 of the West Virginia Judicial Code of Ethics (1982 Replacement Vol.) provides, in part, that "[t]he judicial duties of a judge [magistrate] take precedence over all his other activities." We believe that the evidence in the case before us clearly and convincingly shows that Magistrate Osburn failed to return to his office on September 17, 1982, to attend to the arraignment of Mr. Rideout. Although his assistant may have performed the arraignment, she was not authorized to do so. *See W.Va.Code* 50–1–9. *W.Va.Code*, 62–1–5, requires that law enforcement officers take arrested persons before a magistrate without unnecessary delay, and *W.Va.Code*, 62–1–6 requires the magistrate to follow certain mandatory arraignment procedures. *See, State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982).

After an independent evaluation of the record, we agree that the Judicial Hearing Board was correct in concluding that the magistrate failed to give his official duties preference in violation of Canon 3 of the Judicial Code of Ethics.

Accordingly, the Court hereby reprimands Magistrate Osburn for failing to attend to his official duties on September 17, 1982.

Reprimanded.