327 S.E.2d 163

### In The Matter of Magistrate Margaret MONROE.

#### No. 78–83.

Supreme Court of Appeals at West Virginia.

Feb. 28, 1985.

Richard A. Bush, Renner, Everett, Bush & Powell, Parkersburg, for Margaret Monroe.

Charles R. Garten, Charleston, for Judicial Investigation Comn.

McHUGH, Justice:

This action is before this Court pursuant to Rule III(D) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates. It is based upon a written recommendation to this Court by the West Virginia Judicial Hearing Board, tendered in response to a complaint initiated by Jean E. Clevenger against Margaret Monroe, Magistrate of Wood County, West Virginia. After a hearing upon the matter, the Board recommends that such complaint be dismissed. We hereby adopt the recommendation of the Board and dismiss the complaint.

The record before the Board reveals that in May, 1981, Jean and Todd Clevenger were granted a divorce by the Circuit Court of Wood County. In the order, entered May 29, 1981, Jean Clevenger was awarded custody of their child and they were given

the use of the marital home and its furnishings as long as they occupied the house "within 15 days of the date of the entry of this order and continuously and exclusively live and remain there...."

In late July, 1983, Jean Clevenger and the child moved from the marital home and took with them various furnishings and appliances. In late August, 1983, Todd Clevenger, a Parkersburg police officer, sought from Magistrate Monroe a warrant for his ex-wife's arrest based upon the allegation that his ex-wife had no property interest in the furnishings and appliances once she vacated the marital home and had, therefore, committed grand larceny. Pursuant to a procedure employed in Wood County Magistrate Court, Magistrate Monroe refused to issue the arrest warrant until a police investigation of the incident had been conducted. Todd Clevenger contacted the local detachment of the state police which conducted an investigation.

Todd Clevenger returned to Magistrate Monroe within a few days and filed a sworn complaint alleging that his ex-wife had committed grand larceny by taking from the home various items of furniture and appliances. The record indicates that Todd Clevenger was questioned under oath by Magistrate Monroe concerning the contents of the divorce order. It is undisputed that Magistrate Monroe never requested nor saw the divorce order. She did not contact the investigating police officer. Magistrate Monroe determined the existence of probable cause and issued the warrant for Jean Clevenger's arrest. In ac-

cordance with established procedure, the case was then transmitted to the Clerk of the Magistrate Court for assignment through a rotation system to a magistrate of subsequent proceedings. Magistrate Monroe was never associated with the controversy again. On October 13, 1983, the complaint against Jean Clevenger was withdrawn by Todd Clevenger.

Upon investigation of Jean Clevenger's initial complaint, the West Virginia Judicial Investigation Commission found probable cause that Magistrate Monroe had violated Canons 3A(1)–(4) of the Judicial Code of Ethics which provides: "A Judge Should Perform the Duties of His Office Impartially and Diligently."[1] The Commission commenced formal proceedings against Magistrate Monroe by filing a complaint before the West Virginia Judicial Hearing Board. The complaint alleges that by issuing the arrest warrant against Jean Clevenger "Magistrate Monroe permitted the Magistrate Court to be used to harass Patrolman Clevenger's ex-wife. She failed to be faithful to the law and maintain professional competence in the law; Magistrate Monroe also failed to perform the duties of her office impartially." The Judicial Hearing Board concluded that the Commission had not met its burden of proving any ethical violations of the Judicial Code of Ethics and further found that "Magistrate Monroe has not been guilty of any ethical violation or impropriety whatsoever."

In syllabus point 1 of *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983),

---

1. Canon 3A(1)–(4) of the Judicial Code of Ethics provides in full as follows:

*A Judge Should Perform the Duties of His Office Impartially and Diligently*

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
(2) A judge should maintain order and decorum in proceedings before him.
(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, law-

yers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.
(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

this Court held: " 'The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings.' Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Dostert,* 165 W.Va. 233, 271 S.E.2d 427 (1980)." *See also* syl. pt. 1, *In re Pauley,* 173 W.Va. 475, 318 S.E.2d 418 (1984); syl. pt. 1, *Matter of Osburn,* 173 W.Va. 381, 315 S.E.2d 640 (1984); syl. pt. 1, *Matter of Harshbarger,* 173 W.Va. 206, 314 S.E.2d 79 (1984); syl. pt. 1, *Judicial Inquiry Commission of West Virginia v. McGraw,* 171 W.Va. 441, 299 S.E.2d 872 (1983). "Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.' " Syl. pt. 4, *In re Pauley,* 173 W.Va. 228, 314 S.E.2d 391 (1983); *see also* syl. pt. 2, *Matter of Osburn, supra;* syl. pt. 2, *Matter of Harshbarger, supra.*

With respect to the specific behavior of justices, judges and magistrates, this Court has held that "[t]he deliberate failure to follow mandatory criminal procedures constitutes a violation of the Judicial Code of Ethics." Syl. pt. 2, *In re Pauley,* 173 W.Va. 475, 318 S.E.2d 418 (1984). However, "[a]n error of judgment, absent proof of improper motive, is not grounds for discipline under Canon 3A of the Judicial Code of Ethics." Syl. pt. 3, *West Virginia Judicial Inquiry Commission v. Dostert, supra.* "When a judge, with no intent to prejudice the rights of a party, makes a legal error, his act does not constitute a violation of Canon 2A or Canon 3 of the Judicial Code of Ethics." Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Casto,* 163 W.Va. 661, 263 S.E.2d 79 (1979); *see also* syl., *In the Matter of Greene,* 173 W.Va. 406, 317 S.E.2d 169 (1984).

Magistrate Monroe was obligated to follow the procedures of Rule 4 of the West Virginia Rules of Criminal Procedure upon issuance of the warrant for the arrest of Jean Clevenger. The material subsections provide:

(a) *Issuance.* If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall be issued to any officer authorized by law to arrest persons charged with offenses against the state.

\* \* \* \* \* \*

(b) *Probable Cause.* The findings of probable cause may be based upon hearsay evidence in whole or in part.

*See also* 62–1–2 [1965].

■ Based upon the record before us, the allegations of the formal complaint against Magistrate Monroe were not proved by clear and convincing evidence. It does not appear from the record that Magistrate Monroe violated, deliberately or otherwise, any mandatory criminal procedures with respect to the issuance of the arrest warrant. With respect to Magistrate Monroe's finding of probable cause to issue the arrest warrant, she testified before the Judicial Hearing Board that although she did not actually see a copy of the divorce order in question, she questioned the ex-husband about its contents and the actions of the ex-wife with regard to the alleged stolen property. She testified that she did not ask for a copy of the divorce order because the ex-husband had sworn to his belief of its contents when he filed the complaint. Thereafter, the evidence is clear that Magistrate Monroe followed established procedure and transmitted the case to the clerk of the Magistrate Court after the issuance of the arrest warrant and was never associated with the case again. Other magistrates handled subsequent proceedings of the case. It is our opinion that Magistrate Monroe followed the procedures enunciated by *W. Va. R. Crim.P.* 4 when issuing the warrant for the arrest of Jean Clevenger and did not otherwise violate Canon 3A(1)–(4) of the Judicial Code of Ethics.[2]

2. It should be noted that when Jean Clevenger filed her complaint with the Judicial Investiga-

tion Commission the complaint was made against the "Wood County Magistrate Court In

 We take this opportunity, however, to discuss an issue that was not addressed by the Judicial Hearing Board or the Judicial Investigation Commission. This Court specifically disapproves of the procedure employed by the Wood County Magistrate Court to require a police investigation prior to a finding of probable cause and the issuance of an arrest warrant in felony cases. *W.Va.R.Crim.P.* 3 provides: "The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a magistrate." *W.Va.R.Crim.P.* 4(a) provides: "If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant *shall* be issued...." (emphasis added). As can be seen, a police investigation is not a prerequisite to the issuance of an arrest warrant under *W.Va. R.Crim.P.* 4(a). Although a police investigation may coincidentally be conducted, such an investigation does not provide the legal basis for a finding of probable cause.

The determination of whether probable cause exists to support the issuance of an arrest warrant under *W.Va.R.Crim.P.* 4 is solely a judicial function to be performed by the magistrate and is to be based upon the contents of "the complaint, or from an affidavit or affidavits filed with the complaint." *See People v. Brethauer,* 174 Colo. 29, 33, 482 P.2d 369, 370 (1971); *Hernandez v. People,* 153 Colo. 316, 321–22, 385 P.2d 996, 999 (1963); *see also Metros v. United States District Court for District of Colorado,* 441 F.2d 313, 315 (10th Cir. 1970); *Brown v. Patterson,* 275 F.Supp. 629, 632 (D.Colo.1967), *aff'd,* 393 F.2d 733 (10th Cir.1968).

Based upon all of the above, the formal complaint filed against Magistrate Monroe is hereby dismissed.

Complaint dismissed.

General." Attachments to the complaint detail various transactions between Jean Clevenger and the different magistrates of the county with respect to her divorce from Todd Clevenger during a period from August, 1980 to August, 1983. The Judicial Investigation Commission, upon investigation, found probable cause to exist against two of the Wood County magistrates, one of whom was Monroe. The incident concerning the other magistrate occurred in August, 1980. Both cases were heard by the Judicial Hearing Board in the same proceeding.