465 S.E.2d 644

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner**

v.

**Geary M. BATTISTELLI, A Suspended Member of the West Virginia State Bar, Respondent.**

**No. 22472.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Dec. 8, 1995.

Sherri D. Goodman, Teresa A. Tarr, Office of Lawyer Disciplinary Counsel, Charleston, for Petitioner.

Michael C. Allen, Allen & Allen, L.C., Charleston, for Respondent.

PER CURIAM:

This case is before this Court upon the motion of Disciplinary Counsel of the Lawyer Disciplinary Board of The West Virginia

State Bar to supplement the September 14, 1995, order of this Court which suspended the respondent, Geary M. Battistelli, from the practice of law for a period of two years and nine months. Disciplinary Counsel asserts that, during the suspension and while working as a paralegal, the respondent engaged in the unauthorized practice of law by giving legal advice to an individual seeking an attorney. The motion requests this Court to supplement the suspension order by adding a provision that the respondent have no client contact while working as a paralegal.[1]

This Court has before it the motion of Disciplinary Counsel, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion to supplement the September 14, 1995, suspension order with a provision that the respondent have no client contact while working as a paralegal. However, this case is remanded to the Lawyer Disciplinary Board for a factual determination of whether the respondent actually engaged in the unauthorized practice of law concerning the incident in question.

I

Regrettably, the respondent, an attorney practicing in the Wheeling, West Virginia, area, has had numerous problems concerning professional ethics.[2] Recently, in *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995), this Court ordered the temporary suspension of the respondent from the practice of law in West Virginia, pending the completion of underlying disciplinary proceedings before the Law-

yer Disciplinary Board. This Court ordered the temporary suspension pursuant to the Extraordinary Proceedings provision set forth in Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure.[3]

In accord with the standard enunciated in Rule 3.27, this Court, in *Battistelli*, concluded that sufficient evidence existed indicating that the respondent committed violations of the West Virginia Rules of Professional Conduct and that the respondent posed a substantial threat of irreparable harm to the public.

In particular, noting that the respondent had been the subject of at least twenty five ethics complaints, this Court, in *Battistelli*, focused upon nine specific complaints which involved (1) false statements made by the respondent to Disciplinary Counsel during ethics investigations, (2) dereliction by the respondent in the handling of legal matters of clients and (3) the improper obtaining by the respondent of loans from clients. Although this Court stated in *Battistelli* that the evidence of the respondent's behavior involved the violation of many of the Rules of Professional Conduct, we recognized as particularly noteworthy evidence of violations of Rule 4.1(a) concerning the making of false statements, Rule 8.4(c) concerning dishonesty, fraud, deceit or misrepresentation and Rule 1.8(a) concerning prohibited business transactions with clients.

The *Battistelli* opinion was filed on April 14, 1995, and a subsequent motion filed by the respondent to stay the temporary suspension ordered therein was denied by this Court. In the motion for a stay, however,

---

1. Although, in fact, the motion of Disciplinary Counsel asks this Court to supplement an order entered on April 14, 1995, temporarily suspending the respondent from the practice of law, we have since, on September 14, 1995, entered a final order of suspension. The motion of Disciplinary Counsel requests that "any action taken on respondent's ability to serve as a paralegal during his temporary suspension" be incorporated into this Court's final decision.

2. In addition to the problems outlined above, the respondent, in *Committee on Legal Ethics v. Battistelli*, 185 W.Va. 109, 405 S.E.2d 242 (1991), was fined for misrepresenting the facts in an appeal before the United States Court of Appeals for the Fourth Circuit.

3. Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure provides, in part, that, upon an investigation, "the Office of Disciplinary Counsel shall promptly file a report with the Supreme Court of Appeals indicating whether, in the opinion of Disciplinary Counsel, the lawyer's commission of a violation of the Rules of Professional Conduct or disability poses a substantial threat of irreparable harm to the public." Rule 3.27 further provides that, after a hearing, "the Supreme Court may temporarily suspend the lawyer or may order such other action as it deems appropriate until underlying disciplinary proceedings before the Lawyer Disciplinary Board have been completed."

the respondent indicated that he and Disciplinary Counsel had entered into stipulations and a recommended discipline with regard to the underlying disciplinary proceedings.

The appellant and Disciplinary Counsel had, in fact, executed a document entitled "Stipulated Findings of Fact, Conclusions of Law, Mitigation and Recommended Discipline." As reflected in that document, the respondent admitted to violations of the Rules of Professional Conduct with regard to fourteen ethics complaints, including the nine complaints discussed by this Court in the April 14, 1995, *Battistelli* opinion. Moreover, the respondent agreed to a suspension from the practice of law for a period of two years and nine months.

In June 1995, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board, upon review, adopted the "Stipulated Findings of Fact, Conclusions of Law, Mitigation and Recommended Discipline" and filed its recommendation with this Court. Subsequently, on September 14, 1995, this Court adopted the recommendation of the Hearing Panel Subcommittee and, *inter alia*, suspended the appellant from the practice of law for two years and nine months.[4]

## II

As this Court observed in *Lawyer Disciplinary Board v. Vieweg*, 194 W.Va. 554, 461 S.E.2d 60 (1995), the Lawyer Disciplinary Board of The West Virginia State Bar, through its Disciplinary Counsel and Hearing Panel Subcommittee, functions, as did the former Committee on Legal Ethics, as an administrative arm of this Court. Syl. pt. 2, *Daily Gazette Co. v. Committee on Legal Ethics*, 174 W.Va. 359, 326 S.E.2d 705 (1984). In fact, as we reaffirmed in *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 288, 452 S.E.2d 377, 379 (1994), the authority of the Supreme Court of Appeals to regulate and control the practice of law in West Virginia, including the lawyer disciplinary process, is constitutional in origin. *W.Va. Const.* art. VIII, § 3.

In that context, the standard of review by this Court with regard to the disciplinary process is the same under the new Rules of Lawyer Disciplinary Procedure, effective July 1, 1994, as it was with regard to the former Committee on Legal Ethics. As syllabus point 3 of *McCorkle, supra,* holds:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

In this case, the respondent, upon his suspension from the practice of law, began working as a paralegal in Wheeling for John L. Bremer, an attorney. The record indicates that, in fact, Mr. Bremer took over a substantial portion of the respondent's practice as a result of the suspension. Pursuant to Rule 3.28 of the Rules of Lawyer Disci-

---

4. The order of this Court, entered on September 14, 1995, stated:

There being heard neither consent nor objection from either the respondent or the Office of Disciplinary Counsel, the Court is of opinion to and doth hereby adopt the written recommended disposition of the Subcommittee Hearing. Panel of the Lawyer Disciplinary Board. It is therefore ordered that the license to practice law in the State of West Virginia of the respondent in the above-captioned cases, Geary M. Battistelli, be suspended for a period of two years and nine months, said suspension to be retroactive to the 18th day of May, 1995. It is further ordered that the respondent be required to: (1) petition for reinstatement; (2) be supervised for a period of two years by an attorney licensed in this State approved by the Subcommittee Hearing Panel of the Lawyer Disciplinary Board, with a plan of supervision submitted to the aforesaid Panel; (3) make restitution to appropriate parties, paying half of all monies owed prior to respondent's reinstatement, with the balance to be repaid within twelve months following reinstatement ...[.] It is finally ordered that respondent reimburse the Lawyer Disciplinary Board for all expenses and costs incurred in the investigation and hearing of these matters.

plinary Procedure, the respondent's clients were notified, by letter, of the respondent's change of status.[5] Moreover, in June 1995, Disciplinary Counsel met with Mr. Bremer to discuss the general nature of the respondent's ethics problems and suspension from the practice of law. The record indicates that, during that meeting, Disciplinary Counsel advised Mr. Bremer that the respondent should not have any contact with clients.

The incident in question arose on June 27, 1995. According to Disciplinary Counsel, the respondent and a resident of the Wheeling area by the name of Kimberly Sue Shields had a telephone conversation, during which Ms. Shields stated that she needed an attorney because her boyfriend had been charged with domestic violence and assault. In her subsequent affidavit and deposition, Ms. Shields suggested that the respondent, during the conversation, held himself out to be a practicing attorney and gave her legal advice with regard to her prospective testimony in the case. According to Ms. Shields, the respondent also discussed possible fee arrangements that he and Mr. Bremer would require. When another attorney later informed Ms. Shields that the respondent was under suspension from the practice of law, Ms. Shields signed an affidavit describing the above telephone conversation. The affidavit was brought to the attention of Disciplinary Counsel.

Stating that the respondent's conduct on June 27, 1995, constituted the unauthorized practice of law, Disciplinary Counsel contends that the respondent violated the Rules of Professional Conduct and this Court's suspension order and that the respondent should be sanctioned accordingly.

On the other hand, the respondent filed a counter-affidavit in which he asserted that he "categorically" informed Ms. Shields that he could not handle the case and that he would have to pass the information on to Mr. Bremer. Moreover, in his affidavit, the respondent denies that he gave legal advice to Ms. Shields during the conversation or held himself out to be a practicing attorney.

As a result of the conflict in the evidence concerning the incident of June 27, 1995, therefore, we cannot accord "substantial deference" within the meaning of *McCorkle* to the facts set forth in the motion of Disciplinary Counsel. Importantly, not only has the respondent denied the allegations of Disciplinary Counsel, the Hearing Panel Subcommittee has had no occasion to make findings concerning those allegations for our review. Our suspension order of September 14, 1995, was based upon a number of recommended findings of the Hearing Panel Subcommittee. *See* Rule 3.10 of the Rules of Lawyer Disciplinary Procedure. The incident of June 27, 1995, concerning Ms. Shields, however, is the subject of no such recommended findings, and the Supreme Court of Appeals should not be the fact-finder in the first instance under these circumstances.

■ Given the numerous problems the respondent has had in the past concerning professional ethics, this Court is of the opinion that the September 14, 1995, suspension order should be supplemented with a provision that the respondent have no client contact while working as a paralegal. Specifically, the no client contact provision should include no client contact in person, in writing or by telephone. Indeed, many of Mr. Bremer's clients are former clients of the respondent, and those clients may have a tendency to think that the respondent is still their legal representative. Moreover, it would be much easier for Mr. Bremer to monitor the respondent's conduct if a no client contact provision is added to the suspension order. In any event, the respondent states in his affidavit that he agrees to the restrictions set

---

5. Rule 3.28 of the Rules of Lawyer Disciplinary Procedure concerns the notification to clients of a lawyer's suspended status. The respondent indicated that he sent letters to 116 clients pursuant to that Rule. Each letter stated in part:

I am taking steps to be employed by Mr. Bremer as a paralegal so that I might assist him on cases of those individuals who decide to use his services.

However, in this regard, I want you to fully understand that I will not be permitted to personally give you legal advice. I will not be permitted to attend any court hearing on your behalf, to attend any deposition on your behalf, sign any pleadings on your behalf or personally try your case, should your case proceed to trial. My role will be that as a legal assistant to Mr. Bremer in his personal practice.

forth in the motion of Disciplinary Counsel concerning his employment as a paralegal.

Upon all of the above, the September 14, 1995, order suspending the respondent from the practice of law is supplemented with a provision that the respondent have no client contact while working as a paralegal. However, this case is remanded to the Lawyer Disciplinary Board for a factual determination of whether the respondent engaged in the unauthorized practice of law concerning the incident of June 27, 1995, involving Kimberly Sue Shields, or any other unauthorized practice of law.

Client Contact Prohibited; Remanded for Findings.