501 S.E.2d 772

**In the Matter of Honorable Larry V. STARCHER, Judge, Circuit Court of Monongalia County.**

No. 23681.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 1997.

Decided Jan. 23, 1998.

Charles R. Garten, Judicial Disciplinary Counsel, Charleston, for Judicial Hearing Board.

Thomas V. Flaherty, Christopher W. Jones, Flaherty, Sensabaugh & Bonasso, Charleston, for Respondent, Honorable Larry V. Starcher, Judge.

HOLLIDAY, Judge: [1]

This is a disciplinary proceeding charging the respondent, Judge (now Justice) Larry V. Starcher, with a violation of the *Code of Judicial Conduct* (1996). Specifically, Judge Starcher was charged with violating Sections 5A(3)(a), 5A(3)(d)(i), 5A(3)(d)(ii) and 5C(2) of the *Code of Judicial Conduct.* The Judicial Hearing Board recommended an admonishment with respect to the violation of Section 5C(2).

I.

The circumstances giving rise to this disciplinary proceeding arose during the 1996 Democratic Party primary election, in which Judge Starcher was a candidate for one of two seats on this Court for which the elected justice would serve a full term. The parties have stipulated the relevant facts. The parties entered into the following stipulations:

No. 23681

BEFORE THE
WEST VIRGINIA JUDICIAL HEARING BOARD

IN THE MATTER OF JUDGE LARRY V. STARCHER,
COMPLAINT NO. 90–96

*STIPULATIONS OF FACT*

Come now the undersigned and stipulate to the following Stipulations of Fact in this Case:

1. At all times relevant to the allegations contained in the complaint filed in this matter, Judge Starcher was serving as a Circuit Judge for the 17th Judicial Cir-

1. The Justices of the Supreme Court of Appeals having deemed themselves disqualified, Chief Justice Margaret L. Workman designated Senior Status Judges James O. Holliday and Robert G. Chafin and Circuit Judges Daniel P. O'Hanlon, Charles E. King, Jr., and John A. Hutchison as Acting Justices.

cuit and was a candidate for Justice of the Supreme Court of Appeals for West Virginia.

2. During the course of the campaign, Judge Starcher authored, typed, signed, and personally sent a letter dated March 9, 1996, to individuals involved with an endorsement committee of the Tri–County Labor Council. A copy of this letter with attachment is attached hereto and stipulated into the record as Stipulated Exhibit A.

3. The letter was prepared during the course of a weekend immediately preceding the last nine weeks of the Primary Election campaign in the race for a seat on the West Virginia Supreme Court of Appeals.

4. The letter came about during the course of a planned campaign trip to the Northern Panhandle. During the course of a luncheon on March 7, 1996, with the Democratic chairperson in Marshall County the conversation drifted to Labor's role in the Supreme Court races and to the State AFL–CIO COPE's endorsement of Justice Recht. Judge Starcher was informed that the local Building Trades Council (Marshall–Wetzel–Tyler Counties) had discussed the question of endorsing him rather than Justice Recht. He was informed that the "endorsement committee" of the Union was meeting again on March 16 and that perhaps the Council might reconsider the State COPE's endorsement position. It was suggested to Judge Starcher that the matter be discussed with another individual who was retired, but a politically active AFL–CIO worker.

5. This individual advised Judge Starcher that there was some hope that the Tri–County Council's "endorsement committee" may reconsider the previous endorsement of Justice Recht at its meeting and gave Judge Starcher a list of people that he should write concerning the issue.

6. Mr. Montes who received Stipulated Exhibit A was among the individuals on the list and letters identical to that sent to him were also sent to the other individuals on the list.

Reviewed and approved by:

/S/ Charles R. Garten
Charles R. Garten, Esq.
Post Office Box 1629
Charleston, WV 25326–1629
JUDICIAL DISCIPLINARY
COUNSEL

/S/ Thomas V. Flaherty
Thomas V. Flaherty, Esq.
200 Capitol Street
Fourth Floor
Post Office Box 3843
Charleston, WV 25338–3843
COUNSEL FOR
JUSTICE LARRY V. STARCHER

/S/ Larry V. Starcher
THE HONORABLE LARRY V. STARCHER, JUSTICE
WEST VIRGINIA SUPREME COURT OF APPEALS
Room E–307, Building 1
1600 Kanawha Boulevard, East
Charleston, WV 25305

The letter which is the source of the controversy giving rise to this proceeding was attached to the Stipulations of Fact as Exhibit "A". The letter is on letterhead captioned "Starcher for Supreme Court Committee," and was authored, typed and sent to the addressee by Judge Starcher. The letter reads as follows:

March 9, 1996
Mr. Melvin Montes
504 Benwood Road
Benwood, WV 26031
Dear Melvin:

It is my understanding that a committee of the Marshall–Wetzel–Tyler Labor Coun-

cil is meeting next Saturday to consider local endorsements. I respectively request that you folks consider taking a courageous act and endorse my candidacy for the State Supreme Court at that time. You will *not* be standing alone. You will be doing what is right for labor.

I urge you to look carefully at Court candidates' backgrounds. Also, you should check with labor leaders and labor lawyers who actually know the candidates. I believe that you will find I have been a good public servant for working men and women. My life as been one of "living labor" and working to see that working men and women get a fair shake in our courts.

The candidate that your State COPE Committee endorsed may be a fine gentleman, but he is also a lawyer who had made his living on the backs of labor and who finagled the endorsement through a political deal. Enclosed is a copy of a page from Martindale–Hubbell, a rich lawyer's advertising book. Look at the companies my opponent lists as his clients. Do you really believe that a man who has worked for those companies will provide a level playing field for labor? My opponent is a lawyer who has represented asbestos companies and joined in asking for delays in the processing of asbestos-injured workers' cases while I have steadfastly moved nearly 20,000 of these cases through court in order that injured workers can receive compensation.

I, like you, have lived the life of a working family. My youngest brother *and* his wife are teamsters—they team drive cross country. My oldest brother is a mechanic. Another brother and a brother-in-law work in HVAC. I have several cousins and nephews working in the building trades and in the plants in the Ohio Valley. Personally, I have been a member of two unions and as a lawyer represented a third.

Larry Starcher has always believed that litigants have the right to have issues timely resolved; therefore, I have insisted on moving my docket at a quick pace. I have tried thousands of asbestos cases (most for construction tradesmen), many wrongful discharge cases, picket line injunctive matters, complicated litigation of all types and about every type of case imaginable. And, I believe that people would say that labor gets treated fairly in my court.

It would be particularly helpful to my candidacy to have official labor endorsement. I have been endorsed by several AFL–CIO 0affiliated [sic] locals and/or bodies and feel that I will likely be endorsed by additional AFL–CIO groups, the UMWA, the State FOP, State Deputy Sheriffs' Associ-ation [sic] and hopefully by the teamsters and Weirton Independent Steel Workers' Union.

You might check with other labor leaders to get an idea of how I stand with labor. If any of you know Shelby or Gary Leary, Bill Dean, Bob Campbell, Tom Springer, Rick Williams, Tom Johnson, Kenny Perdue, G.V. Mehalic, Jim Stuben-ro'd, Charlie Jordan, Denny Longfellow (Morgantown), B.B. Smith, Steve White, Carlo Tarley (pleased read the enclosed letter from Carlo), and I could go on and on, you might ask these folks about my reputation with labor.

And, if you seriously consider the alternatives, I am sure you will agree that I have an affinity for working men and women of our State that is not shared by other candidates. I assure you that neither *you* nor labor will be disappointed with a justice such as me on the high court. And I say "thanks" for your help.

> Sincerely,
> /S/ Larry V. Starcher
> Larry V. Starcher

LVS

Attached to the letter was a copy of biographical information extracted from "Martindale–Hubbell" respecting Arthur M. Recht, who was at that time a Justice of the Supreme Court of Appeals of West Virginia, an incumbent candidate for a seat on the Court, and an opponent of Judge Starcher in the Democratic Party primary. The information extracted from "Martindale–Hubbell" related to a time when Justice Recht was a partner in the firm of Schrader, Recht, Byrd, Companion and Gurley. The biographical information attached to the letter indicated

that while in the private practice of law, Justice Recht's areas of practice included Labor and Employment Law. A circle was drawn around these two areas of practice with a line leading to a hand-drawn star and the handwritten comment, "FOR THE COMPANY." The biographical information also contained a list of clients with a triangular hand-drawn bracket to the notation, "RECHT'S CLIENTS." The list of clients consists primarily of businesses.

As stipulated by the parties, this same letter was sent to several individuals associated with the Tri–County Labor Council.

On September 23, 1996, the Judicial Investigation Commission filed a complaint against the respondent, charging him with violations of Sections 5A(3)(a), 5A(3)(d)(i), 5A(3)(d)(ii) and 5C(2) of the *Code of Judicial Conduct.*

On January 9, 1997, the matter came on for hearing before the Judicial Hearing Board. The parties having previously entered into the stipulations of fact set out above, the stipulations were entered into the record by the Judicial Hearing Board.

On May 27, 1997, pursuant to the provisions of Rule 4.8 of the West Virginia Rules of Disciplinary Procedure, the Judicial Hearing Board filed its "Recommended Findings of Fact, Conclusions of Law and Proposed Disposition." A majority of the Judicial Hearing Board found that Judge Starcher had violated Section 5C(2) of the *Code of Judicial Conduct,* and recommended that he be admonished. The Board did not make any findings of fact or conclusions of law, or make any recommendation that the respondent be sanctioned with respect to charges that the respondent violated Sections 5A(3)(a), 5A(3)(d)(i) and 5A(3)(d)(ii) of the *Code of Judicial Conduct.*

On June 11, 1997, pursuant to the provisions of Rule 4.11 of the West Virginia Rules of Disciplinary Procedure, the respondent filed his objection to the Judicial Hearing Board's "Recommended Findings of Fact, Conclusions of Law and Proposed Disposition." The matter was heard by this Court pursuant to Rule 4.11.

## II.

"In order to recommend the imposition of discipline on any judge, the allegations of the formal charge must be proven by clear and convincing evidence." Rule 4.5, *West Virginia Rules of Disciplinary Procedure. See* Syllabus Point 1, *Matter of Hey,* 192 W.Va. 221, 452 S.E.2d 24 (1994); Syllabus Point 4, *In Re Pauley,* 173 W.Va. 228, 314 S.E.2d 391 (1983).

Clear, cogent and convincing proof . . . is the highest possible standard of civil proof defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases."

*Wheeling Dollar Sav. & Trust Co. v. Singer,* 162 W.Va. 502, 510, 250 S.E.2d 369, 374 (1978).

In reviewing the recommendations of the Judicial Hearing Board, this Court is required to make an independent evaluation of the Board's findings of fact and recommendations in order to determine whether the allegations thereof have been proven by clear and convincing evidence. Syllabus Point, *Matter of Hey,* 193 W.Va. 572, 457 S.E.2d 509 (1995); Syllabus Point 1, *West Virginia Judicial Inquiry Comm'n v. Dostert,* 165 W.Va. 233, 271 S.E.2d 427 (1980). The independent evaluation of the Court shall constitute a *de novo* or plenary review of the record.

The respondent contends that the Judicial Investigation Commission has failed to prove a violation of the *Code of Judicial Conduct* by clear and convincing evidence. The bases for this assertion are: 1) That this case is one of first impression in the State of West Virginia; 2) That there are no cases from other jurisdictions with codes which contain language similar to the West Virginia canon which provide guidance as to the meaning of the phrase "a candidate shall not personally solicit . . . publicly stated support"; and 3) that there is very little commentary to guide candidates during campaigns.

The parties entered into stipulations of fact prior to the hearing before the Judicial Hearing Board. The stipulations were entered into the record by the Judicial Hearing Board at the time scheduled for the evidentiary hearing in this matter, in lieu of the evidentiary hearing. The Court is of the opinion that the facts stipulated by the parties constitute proof by clear and convincing evidence.

 "Stipulations or agreements made in open court by the parties in the trial of a case and acted upon are binding and a judgment founded thereon will not be reversed." Syllabus Point 1, *Butler v. Smith's Transfer Corporation*, 147 W.Va. 402, 128 S.E.2d 32 (1962). *See also* Syllabus Point 7, *Spencer v. Steinbrecher*, 152 W.Va. 490, 164 S.E.2d 710 (1968). This Court has noted that the same rule would apply to pre-trial stipulations. *Butler*, 147 W.Va. at 408, 128 S.E.2d at 37.

Where facts are stipulated, they are deemed established as full as if determined by the [trier of facts]. A stipulation is a judicial admission. As such, it is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact.

*Blair v. Fairchilds*, 25 N.C.App. 416, 419, 213 S.E.2d 428, 430–31 (1975). Having entered into stipulations of fact, the respondent is bound by them.

 Stipulations of fact are sufficient to prove facts not only in cases where the burden of proof is by a preponderance of the evidence, but also where there is a heightened burden of proof. Numerous jurisdictions have upheld convictions in criminal cases where one or more of the elements of the crime was proven by stipulation. *See Gardner v. State*, 668 So.2d 164 (Ala.Crim. App.1995); *Nelson v. State*, 318 Ark. 146, 883 S.W.2d 839 (1994); *People v. Dyer*, 45 Cal.3d 26, 753 P.2d 1, 246 Cal.Rptr. 209 (1988); *People v. Dee*, 638 P.2d 749 (Colo.1981); *State v. Laws*, 37 Conn.App. 276, 655 A.2d 1131 (1995); *Jones v. State*, 640 So.2d 204 (Fla.App.4th Dist.1994); *Palmer v. State*, 489 So.2d 226 (Fla.App.5th Dist.1986); *Orman v. State*, 207 Ga.App. 671, 428 S.E.2d 813 (1993); *Tribble v. State*, 89 Ga.App. 593, 80 S.E.2d 711 (1954); *State v. Thompson*, 72 Haw. 262, 814 P.2d 393 (1991); *Clark v. State*, 562 N.E.2d 11 (Ind.1990); *Faught v. State*, 162 Ind.App. 436, 319 N.E.2d 843 (1974); *State v. Everett*, 372 N.W.2d 235 (Iowa 1985); *Sanders v. Commonwealth*, 249 Ky. 225, 60 S.W.2d 586 (1933); *State v. Pritchett*, 302 A.2d 101 (Me.1973); *State v. Brown*, 235 Md. 401, 201 A.2d 852 (1964); *People v. Kremko*, 52 Mich.App. 565, 218 N.W.2d 112 (1974); *State v. White*, 332 N.W.2d 910 (Minn.1983); *State v. Davis*, 224 Neb. 205, 397 N.W.2d 41 (1986); *Wehrheim v. State*, 84 Nev. 477, 443 P.2d 607 (1968); *State v. Latham*, 83 N.M. 530, 494 P.2d 192 (1972); *People v. Garner*, 190 A.D.2d 994, 593 N.Y.S.2d 620 (4th Dept.1993); *State v. Mitchell*, 283 N.C. 462, 196 S.E.2d 736 (1973); *State v. Kainz*, 321 N.W.2d 478 (N.D.1982); *State v. Folk*, 74 Ohio App.3d 468, 599 N.E.2d 334 (1991); *Cook v. State*, 556 P.2d 1067 (Okla.Crim.App.1976); *Commonwealth v. Lemanski*, 365 Pa.Super. 332, 529 A.2d 1085 (1987); *State v. Smyth*, 121 R.I. 188, 397 A.2d 497 (1979); *State v. Edgeworth*, 239 S.C. 10, 121 S.E.2d 248 (1961); *State v. McGrath*, 130 Vt. 400, 296 A.2d 636 (1972); *State v. Irving*, 24 Wash.App. 370, 601 P.2d 954 (1979); and *State v. Aldazabal*, 146 Wis.2d 267, 430 N.W.2d 614 (1988). In considering stipulations of fact in the context of a criminal action, the United States Court of Appeals for the Fourth Circuit has held:

[A factual stipulation] is more potent than simply an admission. By so stipulating, a defendant waives the requirement that the government produce evidence (other than the stipulation itself) to establish the facts stipulated beyond a reasonable doubt. *See United States v. Clark*, 993 F.2d 402, 406 (4th Cir.1993)....

... Because a stipulation induces the government not to offer evidence to prove the facts involved in the stipulation, a defendant may not argue at trial or on appeal that the stipulation is insufficient to prove beyond a reasonable doubt the facts or elements to which he has stipulated. *See United States v. Reedy*, 990 F.2d 167, 169 (4th Cir.1993).

*United States v. Muse,* 83 F.3d 672, 678–79 (4th Cir.1996). Clearly, stipulations of fact may be used in a criminal action to prove a crime, or some element thereof, beyond a reasonable doubt.

Stipulations of fact may also be used to prove facts in actions where the burden of proof is by clear and convincing evidence. This Court disciplined a magistrate for a violation of the *Judicial Code of Ethics (1982)* [2] based, at least in part, on stipulations of fact entered into by the magistrate. *In Matter of Harshbarger,* 173 W.Va. 206, 314 S.E.2d 79 (1984). In *Harshbarger,* the Judicial Hearing Board conducted a hearing in which the respondent-magistrate and other witnesses testified, and in which stipulations were made concerning the circumstances surrounding the events giving rise to disciplinary action. It was the holding of the Court that:

> Upon an independent evaluation of the record and recommendations of the Judicial Hearing Board, *including the stipulation by Magistrate Harshbarger to his premature departure from his designated post* on the morning in question, *we conclude that the allegations against Magistrate Harshbarger were proven by clear and convincing evidence;* and that he should be publicly censured ... (Emphasis added.)

*Id.* at 209, 314 S.E.2d at 82.

This Court has also relied upon stipulations of fact in disciplining a lawyer for violations of the Rules of Professional Conduct. In *Office of Disciplinary Counsel v. Battistelli,* 195 W.Va. 373, 465 S.E.2d 644 (1995), this Court considered an additional suspension of a lawyer who had previously had his license suspended. In discussing the prior suspension, this Court noted that the prior suspension was based solely on stipulations of fact, stating:

> The appellant and Disciplinary Counsel had, in fact, executed a document entitled "Stipulated Findings of Fact, Conclusions of Law, Mitigation and Recommended Discipline." As reflected in that document,

the respondent admitted to violations of the Rules of Professional Conduct with regard to fourteen ethics complaints, including the nine complaints discussed by this Court in the April 14, 1995, *Battistelli* opinion [*Office of Disciplinary Counsel v. Battistelli,* 193 W.Va. 629, 457 S.E.2d 652 (1995) ]....

> In June, 1995, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board, upon review, adopted the "Stipulated Findings of Fact, Conclusions of Law, Mitigation and Recommended Discipline" and filed its recommendation with this Court. Subsequently, on September 14, 1995, this Court adopted the recommendation of the Hearing Panel Subcommittee and, *inter alia,* suspended the appellant from the practice of law for two years and nine months. (Footnote omitted.)

*Id.* at 375, 465 S.E.2d at 646. In disciplinary proceedings against lawyers, the burden is on the Office of Disciplinary Counsel to prove the allegations of any formal charge by clear and convincing evidence. *See* Rule 3.7, Rules of Lawyer Disciplinary Procedure. Although not explicitly stated, the stipulations entered into by the lawyer-respondent and accepted by this Court in *Battistelli* constituted proof by clear and convincing evidence.

In considering the foregoing, it is clear that a party who stipulates facts is bound by those stipulations, that the party with the burden of proof is relieved of the duty of producing evidence to prove the facts so stipulated, and that the facts stipulated are considered to have been proven to the requisite standard of proof, whether the burden of proof be by a preponderance of the evidence, by clear and convincing evidence or beyond a reasonable doubt. These purposes seem to be, at a minimum, the reasons for entering into stipulations of facts. There would be very little point in parties entering into and a tribunal accepting stipulations of fact if the party without the burden of proof could claim that the party with the burden of proof failed to meet the burden. The party with the

---

**2.** The *Judicial Code of Ethics* was superseded by the *Code of Judicial Conduct,* which was adopted effective January 1, 1993.

burden of proof would be required to prove that which has already been stipulated, defeating the very purpose of the stipulations.

■ The standard of proof required by Rule 4.5 of the West Virginia Rules of Judicial Disciplinary Procedure is by clear and convincing evidence. The parties were aware that the Judicial Investigation Commission bore the burden of proof in this action. The parties stipulated the relevant facts with knowledge of the standard of proof, either actual or constructive. The Court is convinced that the stipulation entered into by the respondent and the Judicial Investigation Commission constitutes proof of the stipulated facts by clear and convincing evidence.[3] For purposes of this action, the facts to which the parties have stipulated are considered to have been proven by clear and convincing evidence.

The respondent's assertion that the Judicial Investigation Commission did not prove its case by clear and convincing evidence is without basis. The argument articulated in support of this contention[4] is more in the nature of an assertion that he did not know the law and could not have known the applicable legal standard at the time he engaged in the acts which form the basis of the charge against him. The Court is convinced that this does not, in substance, constitute an assertion that the case against him was not proven by clear and convincing evidence. It is more in the nature of an argument that Section 5C(2) of the *Code of Judicial Conduct* was so unclear that the respondent could not understand the law as set forth in that section, and that there was nowhere he could turn for guidance that would cause him to understand the law.[5] This argument requires a determination as to the whether the acts in which he engaged are prohibited and,

if so, whether or not the statute prohibiting the acts was clear enough for the respondent to know that the acts were prohibited.

### III.

#### A.

■ The *Code of Judicial Conduct* (1996) provides, in relevant part:

**Canon 5. A judge or judicial candidate shall refrain from inappropriate political activity.**

\* \* \*

 C. Judges and candidates subject to public election.—

\* \* \*

(2) *A candidate shall not* personally solicit or accept campaign contributions or *personally solicit publicly stated support. A candidate may, however, establish committees of responsible persons to conduct campaigns for the candidate* through media advertisements, brochures, mailings, candidate forums and other means not prohibited by law. *Such committees may* solicit and accept reasonable campaign contributions, manage the expenditure of funds for the candidate's campaign and *obtain public statements of support for his or her candidacy.* Such committees are not prohibited from soliciting and accepting reasonable contributions and public support from lawyers. A candidate shall not use or permit the use of campaign contributions for the private benefit of the candidate or others. (Emphasis added.)

■ When the language of a canon of the *Judicial Code of Conduct* is clear and unambiguous, the plain meaning of the canon is to be accepted and followed without resorting to rules of interpretation or construction. Syllabus Point 3, *Matter of Starcher,* 193 W.Va.

---

3. The disciplinary proceedings concerning a magistrate and a lawyer on the basis of stipulated facts, as discussed above, are significant because those proceedings are similar to the present disciplinary action. The similarities relate not merely to the burden of proof, but also to the nature of the proceedings and the goals to be achieved by the proceedings.

4. As stated above, the respondent asserts that this case is one of first impression in West Virginia, that there is no law from other states which

have language similar to the West Virginia canon to provide guidance as to the meaning of the phrase "a candidate shall not personally solicit ... publicly stated support," and there is very little commentary to guide candidates during campaigns.

5. This argument presumes that Section 5C(2) prohibits the conduct in which the respondent engaged.

470, 457 S.E.2d 147 (1995); Syllabus Point 1, *Matter of Karr*, 182 W.Va. 221, 387 S.E.2d 126 (1989). The respondent asserts that Section 5C(2) is vague, ambiguous and uncertain. Therefore, he contends, the Section must be interpreted or construed, rather than accepted and followed.

As set forth above, Section 5C(2) states, "A candidate shall not personally solicit or accept campaign contributions or personally solicit publicly stated support." In *Karr*, this Court considered the analogous section in the *Judicial Code of Ethics* (1988), Section 7B(2), which stated, in relevant part, "A candidate ... for a judicial office ... should not himself ... solicit or accept campaign funds, or solicit publicly stated support, ..." [6] This Court held that Canon 7B(2) was clear and unambiguous and, therefore, not subject to interpretation or construction. *Id.* at 224, 387 S.E.2d at 129. The language of the two sections is similar. Unless there is some material difference between the two sections, the holding in *Karr* would dictate that Section 5C(2) of the *Code of Judicial Conduct* is clear and unambiguous, and not subject to interpretation or construction.

The two codes prohibit the same activities that a judicial candidate might undertake during the course of an election campaign: 1) Solicitation of campaign funds or contributions; 2) Acceptance of campaign funds or

contributions; and 3) Solicitation of publicly stated support. The activities prohibited are identical.

The prohibition against engaging in the aforementioned activities, contained in Section 5C(2) of the *Code of Judicial Conduct*, is mandatory. The Preamble to the *Code of Judicial Conduct* states, "When the text uses 'shall' or 'shall not' it is intended to impose binding obligations, the violation of which can result in disciplinary action." The use of the term "shall not" in Section 5C(2) imposes a binding obligation on a judicial candidate to refrain from personally soliciting or accepting campaign contributions, or soliciting public statements of support.

Section 7B(2) of the *Judicial Code of Ethics* (1988) provided that a candidate "should not" engage in certain activities. Use of "should not", in most instances, makes a prohibition mandatory.[7] While the use of "should not" does not always connote a mandatory prohibition,[8] the decision in *Karr* makes it clear that "should not", as used in Section 7B(2) of the *Judicial Code of Ethics* (1988), made mandatory the prohibition contained therein. Each of the two sections contains a mandatory prohibition against soliciting or accepting campaign funds or contributions, and against soliciting publicly stated support.

---

**6.** The full text of Section 7B(2) of the *Judicial Code of Ethics* (1988) provided:

CANON 7
*A Judge Should Refrain from Political Activity Inappropriate to His Judicial Office*

. . . . .

(2) A candidate, including an incumbent judge, for a judicial office that is to be filled by public election between competing candidates should not himself solicit or accept campaign funds, or solicit publicly stated support, but he may establish committees of responsible persons to secure and manage the expenditures of funds for his campaign and to obtain public statement of support for his candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from lawyers. A candidate's committees may solicit funds in accordance with the state law. A candidate should not use or permit the use of campaign contributions for the private benefit of himself of members of his family.

**7.** In defining the word "should" as used in a jury instruction, this has Court stated:

> Though plaintiff argues that the word "should", as "used in this instruction, does not make it a binding instruction as it is not the same as the mandatory word 'shall' or 'must' but more conformity in natural understanding of persons with the word 'may' * * * " .... Perhaps the word "should", in some circumstances, could be given the force or meaning of the word "may", but, being the past tense of the word "shall", usually conveys the idea of a command.

*McMicken v. Province*, 141 W.Va. 273, 284, 90 S.E.2d 348, 354 (1955), overruled, in part, on other grounds by *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).

**8.** In the *Code of Judicial Conduct*, use of "should not" is considered hortatory, and a statement of what is not appropriate conduct. It does not create a binding rule under which a judge may be disciplined. *See* Preamble, *Code of Judicial Conduct*.

In both Section 7B(2) of the *Judicial Code of Ethics* (1988), and Section 5C(2) the *Code of Judicial Conduct,* the prohibition is against personal solicitation by the candidate. The *Judicial Code of Ethics* (1988) uses "himself", while the *Code of Judicial Conduct* uses "personally". Each of these terms indicate that the prohibition relates to personal activity on the part of the candidate. The personal nature of the prohibition in both codes is emphasized by the fact that they each permit a candidate to establish a committee of responsible persons that may solicit and accept campaign contributions and solicit statements of public support.

The prohibitions in both are mandatory and prohibit personal conduct by judicial candidates, as opposed to their committees. For purposes of this decision, the differences between Section 7B(2) of the *Judicial Code of Ethics* (1988) and Section 5C(2) of the *Code of Judicial Conduct* are merely semantic and are not material. The difference between Section 7B(2) of the *Judicial Code of Ethics* (1988) and Section 5C(2) of the *Code of Judicial Conduct* being merely semantic, the language in the *Code of Judicial Conduct* prohibiting all three activities is as clear as that contained in the *Judicial Code of Ethics* (1988). Since the prohibition contained in the *Judicial Code of Ethics* (1988) was clear and unambiguous, it follows that the *Code of Judicial Conduct* is also clear and unambiguous, and not subject to interpretation or construction.

Section 5C(2) of the *Code of Judicial Conduct* does not merely contain a clear and unambiguous prohibition against a judicial candidate personally soliciting publicly stated support, it goes so far as to instruct judicial candidates as to the proper method for soliciting such support. If a candidate desires to solicit publicly stated support, he or she must create a committee of responsible persons for that purpose.[9] The plain language Section 5C(2) makes it clear that only the committee

for a judicial candidate may solicit publicly stated support.

The respondent contends that Section 5C(2) of the *Code of Judicial Conduct* provides no guidance to a judicial candidate as how he or she should undertake to solicit publicly stated support, or how he or she is prohibited from soliciting publicly stated support. The Court disagrees with this contention. By its express language, Section 5C(2) provides guidance to a judicial candidates as to how he or she should solicit publicly stated support. Publicly stated support must be solicited through a committee of responsible persons, not by the candidate. This Court is of the opinion that no clearer guidance could be given.

The Court holds that Section 5C(2) is clear in prohibiting a judicial candidate from personally soliciting publicly stated support. A candidate who personally solicits publicly stated support has violated the *Code of Judicial Conduct* and is subject to disciplinary action. Section 5C(2) is neither vague, ambiguous nor uncertain.

As set forth above,[10] the respondent contends that the Judicial Investigation Commission failed to satisfy its burden of proving a violation of the *Code of Judicial Conduct* by clear and convincing evidence. The Court noted that the reasons articulated by the respondent really were more in the nature of an argument that the prohibition of Section 5C(2) was so ambiguous and unclear that he could not understand it by reading its plain language and, because there is a dearth of legal precedent or analysis in case law and in the commentaries, there was no other source to which he could turn to understand it. In light of the foregoing discussion, the Court is of the opinion that this argument is without merit. The plain language of Section 5C(2) clearly leads to only one conclusion: A judicial candidate may not personally solicit or accept campaign funds or solicit publicly stated support; those activities must be conduct-

---

9. A judicial candidate is not required to create a committee to conduct a campaign. However, as made clear in *Karr,* any solicitation and acceptance of reasonable campaign contributions must be undertaken by the candidate's campaign committee. Similarly, any solicitation of statements of public support, and any expenditures of funds

for the campaign and conduct of the campaign through media advertisements, brochures, mailings, candidate forums and other legal means, must be conducted by such committee.

10. Section II, *supra.*

ed by the candidate's committee. It is impossible to reach any other conclusion.

A reading of the clear provisions of Section 5C(2) should have made it clear to the respondent that writing and sending a letter to certain individuals soliciting the endorsement of the Tri–County Labor Council was prohibited by that Section. The prohibition against the respondent's actions should have been as clear to him as the prohibition against personally accepting campaign funds was clear to the respondents in *Karr*.

The parties have not cited any cases in which courts or disciplinary boards have defined or engaged in any extensive discussion of what constitutes personal solicitation of publicly stated support. The Florida Supreme Court publicly reprimanded a judge for numerous violations of Florida's *Code of Judicial Conduct* [11], including direct solicitation of election support from a member of the bar in violation of Canon 7B(2). *In re Inquiry Concerning a Judge Re Lantz*, 402 So.2d 1144 (Fla.1981). The respondent in the Florida disciplinary action did not contest the violation, eliminating the need for any discussion of the nature of the violation. In Washington, the Washington Commission on Judicial Conduct publicly admonished a judge on the sole basis of his personal solicitation of support during the judge's reelection campaign, stating in its letter of admonishment:

> The Commission on Judicial Conduct finds that during your recent campaign for reelection you violated Canons 1, 2(A), 7(b)(1)(a) and (2) of the Code of Judicial Conduct, by directly and personally soliciting support from attorneys and law enforcement officers. Your contacts included both telephone calls and personal contacts which occurred at various social gatherings, and in and around the courthouse, including your chambers.

*In re: Hal Murtland*, No. 86–503, Unreported Determination (Washington Comm'n February 17, 1987). The absence of any discussion respecting the nature of the offense leads this Court to conclude that the Wash-

ington Commission believed the Canon to be clear and the violation to be apparent. If this Court's reading of the Washington Commission' decision is correct, this Court agrees that Section 5C(2) of the *Code of Judicial Conduct* is clear. The only difference in this action is the form of the solicitation and the persons solicited.

■ This Court's review of the record in this action leads to the inescapable conclusion that the respondent violated the prohibition against soliciting publicly stated support contained in Section 5C(2). When approached by an individual associated with the Tri–County Labor Council and informed of the possibility that the council might consider endorsing him, the respondent did not refer the individual to his committee of responsible persons. Instead, the respondent personally authored, typed and sent a letter which contains an express solicitation of the endorsement of the Tri–County Labor Council. When considering the respondent's conduct in light of the plain language of Section 5C(2), it is clear that the respondent violated that section. It is difficult to conceive of an activity that would constitute a clearer violation of Section 5C(2). The respondent engaged in the very conduct which is prohibited by the clear and unambiguous provisions of Section 5C(2) of the *Code of Judicial Conduct.*

### B.

In arguing that Section 5C(2) is vague and ambiguous, the respondent directs the attention of this Court to the Commentary to the Section 5C(2) in order to construe or interpret that section. The Commentary to Section 5C(2) reads, in relevant part:

> Section 5C(2) permits a candidate, other than a candidate for appointment, to establish campaign committees to solicit and accept public support and reasonable financial contributions....
>
> \* \* \*
>
> Section 5C(2) does not prohibit a candidate from initiating an evaluation by a

---

**11.** The number of the Canon violated by the respondent in the Florida action causes this Court to conclude that the Florida Code in effect at the time of the offense was the equivalent of the West Virginia *Judicial Code of Ethics,* which was in effect at that time and which has been superseded by the *Code of Judicial Conduct.*

judicial selection commission or bar association, or, subject to the requirements of this Code, from responding to a request for information.

Assuming, *arguendo,* that Section 5C(2) is ambiguous and, therefore, must be construed or interpreted, and the holding of this Court is to the contrary, this contention would still be without merit.

The Preamble to the *Code of Judicial Conduct* states, in relevant part:

The Code of Judicial Conduct is intended to establish standards for ethical conduct of judges. It consists of broad statements called Canons, specific rules set forth in Sections under each Canon, an Application Canon [Canon 6], Commentary and a Terminology Section. The text of the Canons, the Sections, and the Terminology is authoritative. *The Commentary, by explanation and example, provides guidance with respect to the purpose and meaning of the Canons and Sections. The Commentary is not intended as a statement of additional rules.* (Emphasis added.)

Clearly, Commentary is not intended to create new rules or to alter or amend the meaning of the Canons and the Sections. It is intended only to provide guidance by explanation and example.

The Commentary to Section 5C(2) provides that judicial candidate may respond to a request for information "subject to the requirements of [the] Code." By its express terms, the qualifying language in the Commentary to Section 5C(2) requires that any judicial candidate must comply with the Code—the Canons and the Sections—when providing information requested by a organization. This language is consistent with the purpose of the Commentary, as set forth in the Preamble to the Code. In this respect, it is a repetition of the Preamble.

A judicial candidate may provide information in response to a request, so long as it is not information which Section 5C(2) requires to be distributed by the candidate's commit-

tee. Clearly, no violation of Section 5C(2) would occur where information in response to a request is provided by the candidate's committee.[12]

The respondent contends that an individual who was a member of or who had ties to the Tri–County Labor Council asked him to provide information to individuals, including members of the council's endorsement committee. He contends that his letter of March 9, 1996, merely provided information to the Tri–County Labor Council, in a manner consistent with the Commentary. On the other hand, the Commission contends that the letter was a solicitation of publicly stated support. The term "publicly stated support" is not defined by the *Code of Judicial Conduct.* An attempt to define the term would help in deciding this case, and will provide guidance to future judicial candidates who may seek to solicit publicly stated support.

■ This Court would define a "publicly stated support" as:

An endorsement or other statement of support for a judicial candidate, whether made by or on behalf of an individual, corporation, partnership, association, organization, political action committee or other entity, which may be or is intended to be disseminated to a person or persons, other than the judicial candidate, members of his or her committee, or to the individual or individuals making the endorsement or other statement of support, either on their own behalf or on behalf of a corporation, partnership, association, organization, political action committee or other entity, and which may be or is intended to be disseminated to officers, employees, shareholders, partners, associates, members of a profession or organization, or to the public at large, or which may be published, and which is intended to or may have the effect of persuading, influencing or otherwise causing the person or persons to whom it is disseminated to vote for or otherwise support said judicial candidate.

---

12. To ensure compliance with the Code, as elaborated upon in the Commentary, the safest course of action for a judicial candidate would be to forward or refer any request for information to his or her committee and allow the committee to provide the requested information to the organization.

Because the integrity of the judiciary is of paramount importance,[13] the Court intends that the term "publicly stated support" be broadly construed so as to include any statement that may not fall within the express terms of the definition, but which might constitute an attempt to cause any individual or entity to make a public statement which might influence any voter to vote for or otherwise support a judicial candidate. The term is to be construed broadly, so that if a judicial candidate has any question as to whether or not he or she might be personally soliciting publicly stated support, the candidate should presume that he or she is doing so and allow his or her committee to handle the solicitation. This will have the effect of preventing coercion or any appearance of coercion, thereby preserving the integrity of the judiciary.

Clearly, the respondent's letter was more than a mere response to a request for information. While it does contain information about the candidate, one may read no further than the second sentence to find an express request that the Tri–County Labor Council endorse the respondent in his bid for a seat on this Court. By its express terms, it is a request for an endorsement. The sixth paragraph is also a fairly explicit request for an endorsement. While there are many different forms of "publicly stated support", an endorsement is probably the clearest. By requesting the endorsement of the Tri–County Labor Council, the respondent was clearly soliciting publicly stated support.[14]

If this Court were to accept the contention advanced by the respondent, judicial candidates could evade the Section 5C(2) prohibition against personal solicitation of publicly stated support merely by providing information in a request for publicly stated support. This would be an invitation to judicial candidates to do indirectly what they cannot do directly.

The respondent contends that the purpose of Section 5C(2) is to prevent candidates from personally seeking campaign contributions and publicly stated support from lawyers. He contends that because of the daily interaction that occurs between lawyers and judges, and the influence that judges have over lawyers, Section 5C(2) safeguards lawyers from personal solicitations by judicial candidates.

However, nothing in Section 5C(2) indicates that it is limited to solicitations of public support from lawyers, or that its safeguards are designed solely for the protection of lawyers. The decision in *Karr* would tend to put this argument to rest. In *Karr*, the Court held that the prohibition against acceptance of campaign funds is designed to enhance and protect the integrity of the judicial system by preventing the extraction of campaign contributions through coercion. In *Karr*, it appears that at least one contributor to each of the candidates was not a lawyer. Each of the candidates received a contribution from his mother, and the opinion states that the other contributors were friends. It seems logical that a candidate's mother and friends are individuals who are less likely to be subject to coercion by a judicial candidate than lawyers or potential litigants who might appear before a judge. If the safeguards of Section 5C(2) apply where the party subject to potential coercion is a candidate's mother and friends, then it must apply where the party subject to potential coercion is a non-relative, a corporation, an association or its members, or some other entity, who is more likely be subject to intimidation or coercion by a candidate.

The respondent also contended that the violations of Section 5C(2) of the *Code of Judicial Conduct* were merely "technical violations." As held in *Karr, supra*, engaging in conduct prohibited by the *Code of Judicial Conduct* is a violation, regardless of whether

---

13. *See* Preamble, *Code of Judicial Conduct*.

14. At oral argument, the respondent contended that the letter, to the extent that it was a request for an endorsement, was a private request for support. The Court rejects this argument. Clearly, any endorsement by the Tri–County Labor Council was intended to influence its mem-

bers and, presumably, their family members, to vote for the endorsed candidate. In addition, it would not be unreasonable to expect the council or the endorsed candidate to publicize the endorsement, in an attempt to cause others, especially those sympathetic to labor, to endorse or vote for the candidate.

or not it is characterized as "technical" or is given some other similar characterization.

## IV.

Based upon the record in these proceedings, this Court adopts the recommendations of the Judicial Hearing Board that the respondent, Larry V. Starcher, be admonished.

Admonishment ordered.