387 S.E.2d 126

**In the Matter of David R. KARR, Candidate for Judge of the Fifth Judicial Circuit.**

**and**

**In the Matter of Charles E. McCARTY, Judge of the Fifth Judicial Circuit.**

**Nos. 18923, 19120.**

Supreme Court of Appeals of West Virginia.

Nov. 20, 1989.

Arthur T. Ciccarello, Charleston, for Charles McCarty.

Charles Garten, Charleston, Dan Robinson, Chairman, Judicial Investigation Com'n, Huntington, for Judicial Investigation Com'n.

David R. Karr, Ravenswood, for David R. Karr.

McHUGH, Justice:

These judicial disciplinary proceedings are before the Court upon the written recommendation of the West Virginia Judicial Hearing Board (hereinafter "the Board").

The respondent in No. 18923 is David R. Karr, a candidate for judge of the Fifth Judicial Circuit.

The respondent in No. 19120 is the Honorable Charles E. McCarty, judge of the Fifth Judicial Circuit.

In 1988, the respondent Karr sought election as a judge for the Fifth Judicial Circuit. His opponent in the general election was the respondent McCarty, who was

the incumbent for the position. Karr had never previously held judicial office.

During the primary, neither respondent set up a committee to solicit or accept campaign funds.[1] Canon 7 of the *Judicial Code of Ethics* states that: "A Judge Should Refrain from Political Activity Inappropriate to His Judicial Office[.]" More specifically, Canon 7B(2) provides:

B. Campaign Conduct.

. . . .

(2) A candidate, including an incumbent judge, for a judicial office that is to be filled by public election between competing candidates should not himself solicit or accept campaign funds, or solicit publicly stated support, but he may establish committees of responsible persons to secure and manage the expenditures of funds for his campaign and to obtain public statements of support for his candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from lawyers. A candidate's committees may solicit funds in accordance with the state law. A candidate should not use or permit the use of campaign contributions for the private benefit of himself or members of his family.

According to the record, neither respondent solicited contributions for their respective campaigns during the primary, but both respondents received contributions, unsolicited. The respondent Karr received $1000 from his mother, and $500 from each of two friends. The respondent McCarty received $1000 from his mother, and contributions from other acquaintances totalling $675.

During the campaign for the general election, both respondents set up commit-

tees. Neither respondent solicited campaign contributions during the general election campaign.[2]

The Judicial Investigation Commission filed complaints with the Board against the respondent McCarty on September 19, 1988 and against the respondent Karr on December 30, 1988. The complaints charged the respondents with violating Canon 7B(2) of the *Judicial Code of Ethics.*

On June 2, 1989, hearings were held before the Board. Subsequent to the hearings, the Board concluded that the respondents violated Canon 7B(2) of the *Judicial Code of Ethics.* The Board recommended that the respondents be admonished.[3]

" 'The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings.' Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Dostert,* [165 W.Va. 233,] 271 S.E.2d 427 (W.Va.1980)." Syl. pt. 1, *In re Pauley,* 173 W.Va. 228, 314 S.E.2d 391 (1983).

In this proceeding we have evaluated the record and, for the reasons that follow, have determined that admonishments are appropriate sanctions to be imposed upon the respondents.

We have not previously had occasion to discuss Canon 7B(2) and its effect upon this state's judiciary.

During the Board's hearing, the respondent Karr admitted that he failed to establish a committee pursuant to Canon 7B(2).[4] The respondent McCarty also admitted that he failed to establish a committee, but he maintains that the spirit of Canon 7 is not

---

1 **The respondent Karr ran unopposed in the primary.** The respondent McCarty had opposition in the primary.

2. The respondent McCarty defeated the respondent Karr in the general election.

3. The Board also concluded that "there was no deceit, hiding of the contributions or the gaining of unfair advantage" by the respondents, and that the respondents' actions were "technical violations."

4. The respondent Karr initially maintained that his interpretation of Canon 7B(2) indicated that he need not comply with the formation of a committee because he ran unopposed in the primary, thus, the position for which he sought election was not to be filled "between competing candidates." He admitted during his hearing, however, that he misread the canon, although he still maintains that it is deceiving.

accomplished by his being disciplined in this proceeding.[5]

This state's *Judicial Code of Ethics* is, for the most part, the same code adopted by most states. *See* C. Wolfram, *Modern Legal Ethics* § 17.3.2, at 966–67 (1986). Other jurisdictions have denied challenges and attempts to amend Canon 7B(2). For example, the Supreme Court of Georgia, relying on its inherent authority to regulate the conduct of judges during judicial elections, held that that state's version of Canon 7B(2), proscribing a judicial candidate's committee from soliciting campaign contributions before and after certain dates, represented a valid exercise of judicial power. *Judicial Qualifications Commission v. Lowenstein*, 252 Ga. 432, 314 S.E.2d 107 (1984). Similarly, the Supreme Court of Florida has denied a challenge to abolish that state's version of Canon 7B(2). *In re Code of Judicial Conduct (Canon 5C(2) & Canon 7B(2))*, 409 So.2d 484 (Fla. 1982).

Typically, however, disciplinary proceedings under Canon 7B(2) involve situations where the judicial officer *personally solicited* election support. *See, e.g., In re Lantz*, 402 So.2d 1144 (Fla.1981); *In re Hotchkiss*, 415 Mich. 1101, 327 N.W.2d 312 (1982).

In this case, as pointed out, the respondents did not solicit campaign contributions themselves, but personally accepted contributions, unsolicited. We must determine, therefore, whether this type of action is in violation of Canon 7B(2).

Certainly, fund-raising for judicial campaigns is an important concern. California's Justice Traynor, in comparing a judicial campaign in some respects to a circus, has addressed the uneasiness of judicial campaigning.

> In the circus [the judicial candidate] would need only to please the onlookers, and it is only they who would pay the price for his antics. In a political contest in which he must market the soul he once called his own, it is the public who must pay the price for his blighted independence.

Traynor, *Rising Standards of Courts and Judges: The California Experience*, 40 J.St.B.Cal. 677, 684 (1965). *Accord*, Kauffman, *Judicial Selection in Pennsylvania: A Proposal*, 27 Vill.L.Rev. 1163, 1170 (1981–82).

Accordingly, fund-raising for judicial campaigns is addressed by the *Judicial Code of Ethics*. Some commentators have taken the opportunity to discuss Canon 7B(2) and its practical effect upon the judiciary.

> A prohibition against receiving gifts from lawyers rests uneasily alongside the fact that a judge's campaign committee may solicit campaign funds under Canon 7B(2). The latter provision does not prohibit solicitation of funds from lawyers who practice in front of the judge. The judge, however, may not solicit any campaign funds personally; any campaign contribution is to the judge's campaign fund and not to him. Although this distinction legally is tenable, the public perception of that distinction is not sympathetic. If a judge attends his campaign function, he is sure to see the attorney contributors in attendance. He is likely to see few others, because few others contribute to judicial campaigns. Herein lies the uneasy tension between the goals of the Code and the realities of an elected judiciary.

Scott, *Reconciling Conflicts in Illinois Judicial Ethics*, 19 Loy.U.Chi.L.J. 1067, 1072 (1988) (footnote omitted).

Likewise, others have addressed the expensive nature of a judicial campaign and its relation to Canon 7B(2).

> Campaigning for a statewide judicial office is an expensive undertaking. Though a judicial candidate may not himself solicit or accept campaign funds, he

---

**5.** The respondent McCarty, in defense of his failure to establish a committee, cites recent criticisms of Canon 7. Whether those criticisms serve as an accurate assessment of the Canon's weaknesses is irrelevant to this proceeding. This proceeding is concerned with whether Canon 7B(2), as written, was violated by the respondents. Thus, our decision in this proceeding is limited to such determination.

may 'establish committees of responsible persons to secure and manage the expenditures of funds for his campaign.' Such committees are not prohibited from soliciting contributions from lawyers or accepting contributions from the coffers of political organizations. Numerous observers have warned that '[a]s long as a judge's campaign committee must accept gifts of money and work from lawyers, there will be gnawing doubts as to his freedom from influence and bias.' Kauffman, *Judicial Selection in Pennsylvania: A Proposal*, 27 Vill.L.Rev. 1163, 1170 & n. 35 (1981–82) (footnote omitted) (quoting Anderson, *Ethical Problems of Lawyers and Judges in Election Campaigns*, 50 A.B.A.J. 819, 823 (1964)).

Obviously, Canon 7B(2) is not impeccable with respect to creating and maintaining confidence in the judiciary while campaigns are being financed. However, this canon represents an attempt to minimize, and perhaps eliminate, the possibility that a judge will be influenced by contributions made to his or her campaign. Related to this concern, and just as important, because lawyers are often the primary funding source for a judicial candidate, Canon 7B(2) attempts to reduce the potential of pressure placed upon lawyers to contribute to a judicial campaign. Moreover, the commentary to this canon, in keeping with the spirit of the canon's purpose, states that "[u]nless the candidate is required by law to file a list of his campaign contributions, their names should not be revealed to the candidate." [6]

■ "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *See also* syl., *State ex rel. Bowlick v. Board of Education*, 176

W.Va. 524, 345 S.E.2d 824 (1986); syl. pt. 1, *Tanner v. Workers' Compensation Commissioner*, 176 W.Va. 427, 345 S.E.2d 29 (1986). Similarly, when the language of a canon under the *Judicial Code of Ethics* is clear and unambiguous, the plain meaning of the canon is to be accepted and followed without resorting to interpretation or construction.

■ In that vein, our reading of Canon 7B(2) makes it clear that the respondents violated Canon 7B(2). The canon clearly states that a candidate for judicial office "should not *himself* solicit *or accept* campaign funds[.]" (emphasis supplied)

Therefore, when a candidate, including an incumbent judge, for a judicial office that is to be filled by public election between competing candidates personally solicits or personally accepts campaign funds, such action is in violation of Canon 7B(2) of the *Judicial Code of Ethics*. A committee established by a judicial candidate, including an incumbent judge, may solicit or accept funds for such candidate's campaign.

Although the actions of the respondents were concluded by the Board to be "technical violations," nevertheless Canon 7B(2) prohibits such actions. We, therefore, agree with the Board's recommendation in these proceedings that the respondents be admonished.[7]

More importantly, however, we must discourage contributions to campaigns for judicial offices which may be extracted through coercion. Such contributions undermine the integrity of the judicial system and must not be tolerated.

Based upon the record in these proceedings, we adopt the recommendation of the Judicial Hearing Board that David R. Karr

---

**6.** Although the respondent McCarty's defense includes challenging the effectiveness of Canon 7B(2), we find it noteworthy that Canon 7B(2) is not the first attempt to govern the campaign conduct of one seeking judicial office. Canon 30 of the *Code of Judicial Ethics*, which was promulgated in 1947, discouraged a judicial candidate from engaging in political activities.

That canon was similar to Canon 7A of the current *Judicial Code of Ethics*.

**7.** Although not an issue before the Judicial Hearing Board, we note the importance of Rule 8.2(b) of the *Rules of Professional Conduct*, which states: "A lawyer who is a candidate for judicial office shall comply with the applicable provisions of the Code of Judicial Conduct."

and Judge Charles E. McCarty be admonished.

Admonishments ordered.