516 S.E.2d 496

**In the Matter of Dan TENNANT, Magistrate for Ohio County.**

**No. 23906.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 16, 1999.

Decided May 27, 1999.

Charles R. Garten, Esq., Judicial Disciplinary Counsel, Charleston, West Virginia.

Gregory Gaudino, Esq., Petroplus & Gaudino, Wheeling, West Virginia.

WORKMAN, Justice:

This judicial disciplinary proceeding is before this Court pursuant to Rule 4.10 of the West Virginia Rules of Judicial Disciplinary Procedure for review of the record and the October 7, 1998, recommended disposition of the Judicial Hearing Board ("Board") with regard to a complaint filed by the Judicial Investigation Commission ("Commission") against the Respondent, Dan Tennant, Magistrate of Ohio County, West Virginia. The complaint charges the Respondent with violating Canon 5C(2) of the Code of Judicial Conduct.[1] The Board recommends that the Respondent be admonished for his improper conduct.

This Court has before it all matters of record, including the exhibits and a transcript of the evidentiary hearing conducted by the Board, as well as the briefs and argument of counsel. Based on this Court's independent review of the record, we find that clear and convincing evidence of improper judicial conduct has been presented. Further, we conclude that, under the circumstances, an admonishment is the appropriate

---

1. Canon 5C(2) of the Code of Judicial Conduct provides:

*Judges and candidates subject to public election.*

. . . .

(2) A candidate shall not personally solicit or accept campaign contributions .... A candidate may, however, establish committees of responsible persons to conduct campaigns for the candidate through media advertisements, brochures, mailings, candidate forums, and other means not prohibited by law. Such committees may solicit and accept reasonable campaign contributions, [and] manage the expenditure of funds for the candidate's campaign .... Such committees are not prohibited from soliciting and accepting reasonable campaign contributions ... from lawyers. *Id.*

sanction to be imposed upon the Respondent. The Court also directs the Respondent to pay the costs of the proceedings.

## FACTS

According to the record, during the time the violations occurred, the Respondent was a candidate for the position of magistrate.[2] On April 4, 1996, a fundraiser was conducted for the Respondent. After the event, which lasted from 6:30 p.m. to 9:30 p.m., the Respondent and his brother, Donald J. Tennant, who is an attorney, proceeded to T.J.'s Sports Bar in Wheeling, West Virginia, to continue campaigning. While at the bar, the Respondent encountered Joseph A. Matyskiela and Michael Galloway, both attorneys. In the Respondent's response to the complaint, he stated that he inquired of both gentlemen as to why they had failed to attend the fundraiser. The Respondent testified that he made this inquiry because Greg McDermott, a partner in the same law firm in which Mr. Matyskiela and Mr. Galloway practiced,[3] was the Respondent's campaign treasurer and, therefore, both attorneys had been invited to the event. The Respondent testified that both attorneys indicated that they did not attend the event because they had been in a trial against Jim Bordas, in which they won.[4]

Both Mr. Matyskiela and Mr. Galloway also testified that the Respondent asked them why they had not contributed to his campaign. Mr. Matyskiela specifically testified that the Respondent indicated that the going rate for contributions from attorneys was $500 and that if he did not contribute, he would receive adverse rulings from the Respondent if he was elected. The Respondent, however, indicated that he "jokingly (with no intent of violating any canon) commented that the attorneys should be in a position to contribute to his campaign since they had just won a big case." The Respondent denies that he solicited campaign funds from the attorneys and that he was only making "off the cuff" joking comments.[5] To that end, Greg McDermott testified that when Mr. Matyskiela conveyed to him the conversation he had had with the Respondent wherein the Respondent asked for a $500 contribution, Mr. McDermott responded that "he [the Respondent] was just kidding because I've known Dan [the Respondent] for a long time and that's just his sense of humor." Mr. Matyskiela, however, testified that "Magistrate Tennant did not know me well enough to be joking about a matter [referring to the comment about a campaign contribution] of that seriousness."

Mr. Matyskiela also testified that he encountered the Respondent once again on June 28, 1996, at the Stratford Springs Inn. According to Mr. Matyskiela, the Respondent approached him and again indicated that Mr. Matyskiela was one of the few that had not contributed to the campaign. Mr. Matyskiela testified that the Respondent reiterated that $500 was the going rate. The Respondent further suggested that a failure to contribute would result in unfavorable rulings if Mr. Matyskiela appeared before the Respondent once elected. The Respondent denies this allegation. The Respondent,

---

2.  The Respondent had filed to run for magistrate during the 1996 election. He was appointed to that position on July 15, 1996, by the Honorable Craig Broadwater, Judge of the First Judicial Circuit, as a result of the death of another magistrate in the county. The Respondent took office as a Magistrate of Ohio County, West Virginia, on August 1, 1996. The complaint which initiated the investigation incorrectly indicated that the Respondent was serving as a magistrate at the time of the alleged violation of the canon. Canon 5 of the Code of Judicial Conduct, however, "generally applies to all incumbent judges and judicial candidates. A candidate, whether or not an incumbent and whether or not successful, is subject to judicial discipline for his or her campaign conduct." Canon 5E of the Code of Judicial Conduct.

3.  Mr. Matyskiela was an associate in Mr. McDermott's firm, while Mr. Galloway was a partner in the firm.

4.  Court documents submitted indicate that the trial occurred on April 26, 1996. Additionally, Mr. Matyskiela and Mr. Galloway were defense attorneys and the case against Mr. Bordas resulted in a defense verdict in which no monetary damages were awarded.

5.  The Respondent's brother testified that he did not remember the Respondent making any comments about a contribution from either attorney.

however, testified that he had purchased a round of beer for a group of individuals at the Inn, which included Mr. Matyskiela. The Respondent indicated that when he took the beer over to Mr. Matyskiela, he told the Respondent that he would not accept the beer from a judicial candidate. The Respondent accepted Mr. Matyskiela's response.

On September 5, 1999, Mr. Matyskiela submitted a motion to transfer the first case he had before the Respondent, who was then a duly-elected magistrate, to another magistrate. He attached an affidavit setting forth the two conversations he testified to before the Board regarding the solicitations made by the Respondent. He further stated in the affidavit that

> [t]he undersigned counsel has no basis in fact to determine the sincerity of the aforementioned statements by Magistrate Tennant but, as a matter of precaution and out of concern for the fair treatment of his client herein, does hereby request that this case be transferred to another Ohio County Magistrate in order to avoid even the appearance of impropriety.

The Respondent signed an order on September 6, 1996, transferring the case.[6]

### ISSUE

■ Rule 4.5 of the Rules of Judicial Disciplinary Procedure provides that "[i]n order to recommend the imposition of discipline on any judge, the allegations of the formal charge must be proved by clear and convincing evidence." *Id.* Thus, the sole issue is whether the record demonstrates by clear and convincing evidence that the Respondent violated Canon 5C(2) of the Code of Judicial Conduct. In making such a determination, this Court held in syllabus point one of *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980), that "[t]he Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial ... [Hearing] Board in disciplinary proceed-

ings." *Accord* Syllabus, *In re Browning*, 197 W.Va. 75, 475 S.E.2d 75 (1996).

■ The Respondent was charged with violating Canon 5C(2) of the Code of Judicial Conduct. That canon provides, in pertinent part:

> *Judges and candidates subject to public election.*
>
> ....
>
> (2) A candidate shall not personally solicit or accept campaign contributions .... A candidate may, however, establish committees of responsible persons to conduct campaigns for the candidate through media advertisements, brochures, mailings, candidate forums, and other means not prohibited by law. Such committees may solicit and accept reasonable campaign contributions, [and] manage the expenditure of funds for the candidate's campaign .... Such committees are not prohibited from soliciting and accepting reasonable campaign contributions ... from lawyers.

*Id.* This Court has previously held that "[w]hen the language of a canon under the *Judicial Code of Ethics* is clear and unambiguous, the plain meaning of the canon is to be accepted and followed without resorting to interpretation or construction." Syl. Pt. 1, *In re Karr*, 182 W.Va. 221, 387 S.E.2d 126 (1989).

■ In *Karr*, a case analogous to the instant matter, the respondent judges were charged with personally receiving *unsolicited* campaign contributions, because they failed to establish campaign committees.[7] *Id.* at 222, 387 S.E.2d at 127. In discussing whether the respective judges' conduct violated the pertinent provisions of the Code of Judicial Ethics, we underscored the importance of the prohibition against personal solicitations when we held that, "[w]hen a candidate ... for a judicial office that is to be filled by public election between competing candidates personally solicits ... campaign funds, such action is in violation of Canon 7B(2) of the *Judicial Code of Ethics.*" 182 W.Va. at 224,

---

6. Mr. Matyskiela testified that he did not know how the information contained in his motion to transfer, as well as the affidavit filed in support thereof, was forwarded to the Commission.

7. The respective violations in *Karr* stemmed from Canon 7B(2) of the Judicial Code of Ethics, which was the predecessor to Canon 5C(2) of the Judicial Code of Ethics.

387 S.E.2d at 129 and Syl. Pt. 2, in part. This Court ultimately upheld the Board's recommendation of admonishment with respect to the respondents' receipt of unsolicited campaign contributions. *Id.*

As noted above, the *Karr* case was decided under the former Canon 7B(2) of the Judicial Code of Ethics. That canon provided that

'[a] candidate ... for a judicial office that is to be filled by public election between competing candidates *should* not himself solicit or accept campaign funds ..., but he may establish committees of responsible persons to secure and manage the expenditures of funds for his campaign .... Such committees are not prohibited from soliciting campaign contributions ... from lawyers....'

*Karr,* 182 W.Va. at 222, 387 S.E.2d at 127 (quoting Canon 7B(2)) (Emphasis added). One of the most noticeable changes between the former Canon 7B(2) and the current Canon 5C(2) is that the wording in Canon 7B(2) stated that a candidate for judicial office "should not" solicit campaign funds. In the current version of the canon, the words "should not" were changed to the mandatory "shall not" personally solicit campaign funds. *Cf.* former Canon 7B(2) of the Code of Judicial Conduct with current Canon 5C(2) of the Code of Judicial Conduct. This change in terminology from "should" to "shall" makes it unequivocal that such conduct is prohibited under the code.

■ Because the pertinent language contained within Canon 5C(2) is clear and unambiguous, we accept the plain meaning of the canon. *See* Syl. Pt. 1, *Karr,* 182 W.Va. at 221, 387 S.E.2d at 126. Accordingly, we hold that when a judicial candidate, whether or not an incumbent, personally solicits campaign contributions, such conduct violates Canon 5C(2) of the Code of Judicial Conduct.

■ The Respondent argues that clear and convincing evidence does not exist to support the Board's conclusion that he solic-

ited campaign contributions. The Respondent relies upon the Webster's Dictionary definition of the word "solicit" as support for his position that his comments "though ill-advised, do not amount to an act of solicitation." According to the Respondent, the term "solicit" is defined in Webster's New Twentieth Century Unabridged Dictionary as " 'to ask or seek earnestly or pleadingly; to beg, to entreat.' " Utilizing this definition, the Respondent argues the because he was joking when he asked for the contribution, he was not soliciting as that term is defined.[8] In the alternative, the Respondent argues that if his actions violated the canon, an admonishment is the appropriate sanction.

Assuming, arguendo, that the Respondent's request for a campaign contribution was a joke, the Respondent's attempt either to lessen the significance of the violation or to negate the violation entirely by contending that the solicitation was a joke is disingenuous. For this Court to accept such an argument would essentially undermine the clear, unambiguous language of the canon. Nowhere in the plain language of the canon is there even an inference that a solicitation made in jest is permissible. *See* Canon 5C(2) of the Code of Judicial Conduct. Further, just because the Respondent may have made the comment in jest, does not necessarily mean that the comment was received by the attorneys who heard it in jest. Quite to the contrary, from the testimony of Mr. Matyskiela, his interpretation of the comment was that the Respondent made a serious solicitation of a campaign contribution from him. "[B]ecause lawyers are often the primary funding source for a judicial candidate, ... [Canon 5C(2) ] attempts to reduce the potential of pressure placed upon lawyers to contribute to a judicial campaign." *Karr,* 182 W.Va. at 224, 387 S.E.2d at 129. Consequently, even if the solicitation was intended jokingly, that does not negate the fact that the receiver of the solicitation may feel pressure to contribute to the campaign.[9] *See id.*

8. Further, the Respondent argued that there may have been political motivations for the judicial complaint in that Mr. Matyskiela was apparently an acquaintance of Harry Radcliffe, who was also a candidate for magistrate.

9. Similarly, the Board concluded that

In the case at hand, Magistrate Daniel C. Tennant admitted in his Response that he jokingly indicated that the Attorney Joseph A. Matyskiela and Attorney Mike Galloway could

Moreover, we cannot ignore the fact that Mr. Matyskiela's testimony indicated that on the two occasions the solicitations were made, the Respondent stated that the failure to contribute would result in adverse rulings if Mr. Matyskiela appeared before him. "[W]e must discourage contributions to campaigns for judicial offices which may be extracted through coercion. Such contributions undermine the integrity of the judicial system and must not be tolerated." *Id.*

## CONCLUSION

Based upon our review of the record in these proceedings, we adopt the recommendation of the Board and order that Magistrate Dan Tennant be admonished. The Court further directs Magistrate Tennant to pay the costs of the proceedings.

Admonishment and costs ordered.

contribute to his campaign since they won a big case. A judicial candidate must refrain from personally soliciting campaign funds, even if it is done in a joking manner. The recipients of such solicitation may not understand that the judicial candidate is making such comments in jest.